******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTHONY DYOUS *v.* COMMISSIONER
OF MENTAL HEALTH AND
ADDICTION SERVICES
(SC 19582)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued September 14—officially released December 22, 2016\**

*David J. Reich*, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Peter A. McShane*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, J. The petitioner, Anthony Dyous, appeals[1] from the judgment of the habeas court denying his petition for a writ of habeas corpus, in which he sought immediate release from the custody of the respondent, Commissioner of Mental Health and Addiction Services. On appeal, the petitioner contends, inter alia, that the habeas court improperly determined that: (1) in *Duperry* v. *Solnit*, 261 Conn. 309, 803 A.2d 287 (2002), this court considered the issue of whether a plea of not guilty by reason of mental disease or defect must be knowing and voluntary and, further, that *Teague* v. *Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), bars this claim for habeas relief; and (2) his criminal trial attorney rendered effective assistance of counsel by failing to research the law surrounding the defense of mental disease or defect and failing to inform the petitioner of the court's authority to extend his commitment beyond the maximum twenty-five year sentence. We disagree with the petitioner's claims and, therefore, affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. In December, 1983, the petitioner hijacked a bus carrying forty-seven people by stating that he was armed with a bomb and nerve gas. Once on the bus, the petitioner ordered the bus driver to drive to a bank. After moving some of the passengers from the bus into the bank, the petitioner held them hostage. He then contacted the state police to demand that he speak with a news reporter so that he could be interviewed regarding a perceived threat to national security. The petitioner then allowed the passengers to leave the bank unharmed, and police officers entered the bank and arrested him without further incident.

The state charged the petitioner with two counts of kidnapping in the first degree in violation of General Statutes (Rev. to 1983) § 53a-92 (a) (1), two counts of threatening in the second degree in violation of General Statutes (Rev. to 1983) § 53a-62 (a) (1), and one count of carrying a dangerous weapon in violation of General Statutes (Rev. to 1983) § 53-206 (a). The petitioner, represented by counsel, pleaded not guilty to all charges. He then filed a notice of his intention to assert a defense of mental disease or defect. The petitioner was tried before the court on November 2, 1984, in a nonadversarial proceeding during which neither party challenged the other's case. After the proceeding, the court rendered a judgment that acquitted the petitioner of all offenses on the basis of mental disease or defect and committed the petitioner to the custody of the respondent for a period not to exceed twenty-five years. The respondent later transferred custody of the petitioner to the jurisdiction of the Psychiatric Security Review Board (board) in accordance with General Statutes

§ 17a-602.

Since his initial confinement, despite multiple unsuccessful challenges, the petitioner has remained committed to the custody of the board for more than twenty-five years.[2] To challenge his extended confinement, the petitioner filed a petition for habeas corpus. Following the appointment of habeas counsel, the petitioner filed a revised amended petition, through which he raised two claims relevant to this appeal: (1) his pursuit of a defense based on mental disease or defect was not knowing and voluntary, in violation of his due process rights, because he believed that he could not be confined involuntarily beyond a maximum period of twenty-five years; and (2) trial defense counsel was ineffective by failing to research the law and advise the petitioner that he could be confined involuntarily for more than twenty-five years in the event he was found not guilty by reason of mental disease or defect.[3]

The habeas court denied the petitioner's petition for a writ of habeas corpus. In its thoughtful and comprehensive memorandum of decision, the court concluded that: (1) the petitioner's claim that his plea of not guilty by reason of mental disease or defect was not knowing and voluntary was barred by *Duperry* v. *Solnit*, supra, 261 Conn. 309, and in any event was barred procedurally by *Teague* v. *Lane*, supra, 489 U.S. 288; and (2) the petitioner failed to prove that his criminal trial counsel was constitutionally ineffective under either of the deficient performance or prejudice prongs of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).[4] The petitioner filed a petition for certification to appeal, which the habeas court granted. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We begin with the petitioner's assertion that the habeas court incorrectly determined that *Duperry* v. *Solnit*, supra, 261 Conn. 309, and *Teague* v. *Lane*, supra, 489 U.S. 288, precluded his claim that his plea of not guilty by reason of mental disease or defect was not knowing and voluntary. This claim presents a question of law over which our review is plenary. See, e.g., *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 799–800, 950 A.2d 1220 (2008).

A

Because they set the legal stage for the petitioner's claim, we review *Duperry* v. *Solnit*, supra, 261 Conn. 309, and the federal district court's decision in *Duperry* v. *Kirk*, 563 F. Supp. 2d 370 (D. Conn. 2008), which involve the same petitioner, Adam Duperry, and arise from the same underlying set of facts. In *Duperry* v. *Solnit*, supra, 311, this court considered whether the habeas court "improperly established a new constitutional rule in a collateral proceeding in contravention

of the principle announced in *Teague* v. *Lane*, [supra, 489 U.S. 288], by concluding that a criminal defendant who pleads not guilty with the affirmative defense of mental disease or defect must be canvassed as though he is pleading guilty to ensure that his plea is made knowingly and voluntarily . . . ."[5] (Footnote omitted.) We engaged in a *Teague* analysis of whether the canvass issue was procedurally barred and ultimately held, "with respect to the plea canvass, that the habeas court improperly declared and applied a new constitutional rule in contravention of the principle enunciated in *Teague*."[6] *Duperry* v. *Solnit*, supra, 312. Thus, we reversed the habeas court's judgment, which originally had granted Duperry's petition for a writ of habeas corpus. Id.

Duperry subsequently filed a habeas petition in federal court to challenge his confinement. *Duperry* v. *Kirk*, supra, 563 F. Supp. 2d 370. In *Kirk*, the United States District Court for the District of Connecticut considered whether Duperry's claim that his plea was not entered knowingly and voluntarily and his canvass claim were doctrinally separate and distinct. See Id., 382–83. The court separated the two counts in Duperry's federal petition and determined that each was based on a unique ground. Id., 383–84. The court observed that, "[t]he canvass rule helps ensure that a plea is knowing, voluntary and intelligent, but the requirement that plea be knowing, voluntary and intelligent represents an independent constitutional imperative, regardless whether the specific canvass *rule* is required." (Emphasis in original.) Id., 384. After determining that Duperry had raised two separate claims in his petition, the federal court analyzed whether this court had reached and decided the merits of both claims in *Solnit*, in order to determine whether the federal court owed deference to this court's adjudication of Duperry's claims. Id.

The federal court analyzed, in great depth, footnote 7 in this court's opinion in *Solnit*, which stated: "In light of our conclusion, we do not address whether the substance of the habeas court's holding was proper, i.e., whether the principle of *Boykin* v. *Alabama*, [395 U.S. 238, 242–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)], that due process requires a plea of guilty to be knowing and voluntary, applies equally to a plea of not guilty by reason of mental disease or defect." *Duperry* v. *Solnit*, supra, 261 Conn. 326 n.7. The federal court read this footnote to mean that we "expressly declined to decide that issue." *Duperry* v. *Kirk*, supra, 563 F. Supp. 2d 383. Thus, it held that, with respect to Duperry's claim regarding the knowing and voluntary nature of his plea, it owed no deference to this court's prior decision and noting that, "[b]ecause [*Solnit*] did not reach the merits of the [claim regarding Duperry's plea] the de novo standard of review applie[d]." Id., 384.

In the present appeal, the petitioner claims that the federal court's interpretation of *Duperry* v. *Solnit*, supra, 261 Conn. 309, in *Duperry* v. *Kirk*, supra, 563 F. Supp. 2d 383, controls. He contends that the habeas court improperly analyzed footnote 7 in *Solnit* and, instead, advocates in support of the reasoning in *Kirk* that this court failed to address the claim regarding Duperry's plea in *Solnit*. See *Duperry* v. *Kirk*, supra, 383. In response, the respondent claims that the habeas court properly concluded that the claim regarding the knowing and voluntary nature of Duperry's plea is precluded by *Solnit*, as this court considered both the claim regarding Duperry's plea and his canvass claim. The respondent further contends that the federal court's decision in *Kirk* is a misinterpretation of state law.

Regardless of whether this court considered the claim regarding Duperry's plea in *Solnit*, the petitioner's claim in the present case still fails. Assuming, without deciding, that the federal district court correctly determined in *Kirk* that this court did not consider the claim regarding Duperry's plea; see *Duperry* v. *Solnit*, supra, 261 Conn. 326 n.7; the claim regarding the knowing and voluntary nature of the petitioner's plea in the present appeal nevertheless is barred by *Teague* v. *Lane*, supra, 489 U.S. 288.

B

With respect to *Teague* v. *Lane*, supra, 489 U.S. 288, the petitioner claims that the habeas court improperly determined that the claim regarding the knowing and voluntary nature of his plea was barred because that claim did not require the habeas court to establish a new constitutional rule of criminal procedure in a collateral proceeding. He relies on *Boykin* v. *Alabama*, supra, 395 U.S. 238, which held that guilty pleas must be knowing and voluntary to comport with the due process clause of the fourteenth amendment to the United States constitution. Relying on *Duperry* v. *Kirk*, supra, 563 F. Supp. 2d 385–86, the petitioner claims that the *Boykin* principle extends to defenses based on mental disease or defect. Thus, the petitioner contends that it was well established at the time of his plea that the election to pursue an affirmative defense of mental disease or defect, like a decision to plead guilty, had to be knowing and voluntary. The petitioner asserts that, because this rule was well established at the time he entered his plea, the habeas court would not have needed to establish a new constitutional rule of criminal procedure to grant relief on his claim. The petitioner asserts, rather, that the habeas court need only apply *Boykin* to the facts of the present case. Further, the petitioner claims that, even if the relief he sought required the habeas court to establish a new procedural rule, that rule falls within the watershed exception set forth in *Teague* v. *Lane*, supra, 311–13, and, as such, is not procedurally barred.[7] Finally, the petitioner claims that, because this court

may consider the merits of his claim, it should hold that his plea of not guilty by reason of mental disease or defect was not made knowingly and voluntarily and, thus, order his release.

In response, the respondent contends that the habeas court, relying on *Duperry* v. *Solnit*, supra, 261 Conn. 318–26, properly determined that the petitioner's claim regarding the knowing and voluntary nature of his plea was barred by *Teague* v. *Lane*, supra, 489 U.S. 288. In support of that contention, the respondent argues that no established precedent in existence at the time of the petitioner's trial required a plea of not guilty by reason of mental disease or defect to be knowing and voluntary as a matter of constitutional law, including *United States* v. *Brown*, 428 F.2d 1100 (D.C. Cir. 1970), and *Miller* v. *Angliker*, 848 F.2d 1312 (2d Cir.), cert. denied, 488 U.S. 890, 109 S. Ct. 224, 102 L. Ed. 2d 214 (1988), on which the federal court relied in *Duperry* v. *Kirk*, supra, 563 F. Supp. 2d 376–77. As such, the respondent claims that affording habeas relief would require the habeas court to create, and apply retroactively, a new constitutional rule of criminal procedure in contravention of *Teague*. We agree with the respondent and conclude that *Teague* bars the claim relating to the petitioner's plea. We further hold that this rule does not fall within the "watershed exception" to *Teague*.[8]

When considering the potential retroactive application of a new rule of constitutional criminal procedure, we apply the rule of *Teague* v. *Lane*, supra, 489 U.S. 288. See *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 103–106, 111 A.3d 829 (2015). Although not mandated to do so under the federal constitution; see *Danforth* v. *Minnesota*, 552 U.S. 264, 282, 128 S. Ct. 1029, 169 L. Ed. 2d 859 (2008); we continue to follow the *Teague* analysis because it provides a framework for consistent results, and furthers the state's interest in fairness, due process, and finality of convictions. *Thiersaint* v. *Commissioner of Correction*, supra, 111–12. In *Teague*, the United States Supreme Court held that new constitutional rules of criminal procedure should not be established in or applied to collateral proceedings, including habeas corpus proceedings. *Teague* v. *Lane*, supra, 315–16. A rule is considered to be "new" "when it breaks new ground or imposes a new obligation on the [s]tates or the [f]ederal [g]overnment. . . . To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." (Citations omitted; emphasis omitted.) Id., 301. Further, "a holding is not so dictated . . . unless it would have been apparent to all reasonable jurists." (Internal quotation marks omitted.) *Chaidez* v. *United States*, U.S. , 133 S. Ct. 1103, 1107, 185 L. Ed. 2d 149 (2013). On the other hand, "*Teague* also made clear that a case does *not* announce a new rule, [when] it [is] merely an application of the principle that gov-

erned a prior decision to a different set of facts." (Emphasis in original; internal quotation marks omitted.) Id.

This court has further explained what constitutes a new rule for *Teague* purposes, observing that: "Although the court in *Teague* did not find it necessary to define the meaning of a rule, it is clear that the court was referring to a constitutional rule of criminal procedure issued by a court that would be used as a guiding principle in future cases. Thus, the court repeatedly referred to the fact that new rules are 'announced' or 'promulgated' only in specific cases . . . and that a case does not announce a new rule if the result is dictated by 'precedent' . . . or by the application of a principle that governed a past decision." (Citations omitted.) *Thiersaint* v. *Commissioner of Correction*, supra, 316 Conn. 122 n.18.

The first step in our *Teague* analysis is to determine whether the habeas court in the present case could have afforded the petitioner relief based on established jurisprudence governing his claim that his plea of not guilty by reason of mental disease or defect should be vacated because he had not elected it knowingly and voluntarily, or whether affording such relief would have required the court to establish a new constitutional rule of criminal procedure. An analysis of the precedent existing at the time of the petitioner's trial in 1984 makes clear that no rule existed at that time that would have compelled the trial court to ensure that the petitioner's plea was knowing and voluntary. The case in existence at that time and most closely related to the present case, upon which the petitioner heavily relies, is *Boykin* v. *Alabama*, supra, 395 U.S. 242–44, in which the United States Supreme Court held that all guilty pleas must be made knowingly and voluntarily, as a defendant pleading guilty waives important constitutional rights. The court stated in *Boykin* that "[s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the [f]ifth [a]mendment [to the United States constitution] and applicable to the [s]tates by reason of the [f]ourteenth [amendment]. . . . Second, is the right to trial by jury. . . . Third, is the right to confront one's accusers." (Citations omitted.) Id., 243. For a waiver of such rights "to be valid under the [d]ue [p]rocess [c]lause, it must be an intentional relinquishment or abandonment of a known right or privilege." (Internal quotation marks omitted.) *McCarthy* v. *United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969).

Because the petitioner adopts much of the federal court's reasoning in *Kirk* in support of his claim that *Boykin* governs pleas of not guilty by reason of mental disease or defect, we continue our *Teague* analysis with

a review of *Kirk*. As stated previously, the federal court considered the claim regarding the knowing and voluntary nature of Duperry's plea de novo, after holding that this court did not reach the merits of that claim in *Duperry* v. *Solnit*, supra, 261 Conn. 326 n.7. See *Duperry* v. *Kirk*, supra, 563 F. Supp. 2d 382–83. The federal court then held—without significant analysis— that the claim regarding Duperry's plea raised no new rule of constitutional criminal procedure that would bring it under *Teague*. See id., 383 ("The strategic value of characterizing both [c]ounts . . . as raising a claim based on the failure of the trial court to canvass [Duperry] is obvious. The canvass claim is subject to strong arguments that it is barred by *Teague*. . . . Those disadvantages do not attach to a claim that [Duperry's] plea was not knowing, voluntary and intelligent, because such a claim raises no new rule of law that would bring it under *Teague*, and [*Solnit*] expressly declined to decide that issue." [Emphasis omitted.]).

In considering whether a plea of not guilty by reason of mental disease or defect that is not knowing or voluntary violates a defendant's due process rights, the federal court first discussed the Supreme Court's holding in *Boykin* v. *Alabama*, supra, 395 U.S. 238, that all guilty pleas must be knowing and voluntary to comport with due process. *Duperry* v. *Kirk*, supra, 563 F. Supp. 2d 385–86. It then noted the similarities between guilty pleas and pleas of not guilty by reason of mental disease or defect, citing both *Miller* v. *Angliker*, supra, 848 F.2d 1312, and *United States* v. *Brown*, supra, 428 F.2d 1100, and ultimately concluding that *Brown* was "persuasive on the issue whether the constitutional principle that a guilty plea must be made knowingly and voluntarily applies equally to [pleas of not guilty by reason of mental disease or defect]." *Duperry* v. *Kirk*, supra, 386–88. Finally, the federal court held that, "[b]ecause . . . pleas [of not guilty by reason of mental disease or defect] impose the consequence of involuntary confinement and operate as waivers of important constitutional trial rights in the same way that guilty pleas do, the longstanding constitutional principles that obligate guilty pleas to be made knowingly, intelligently, and voluntarily, attach with equal force to [pleas of not guilty by reason of mental disease or defect]." Id., 388. Thus, the federal court granted Duperry relief, as it determined that his plea was not knowing or voluntary, as required by the court's application of *Boykin*.

We disagree with the petitioner's reliance on the federal court's analysis of the claim regarding Duperry's plea, including its conclusion that the claim was not barred by *Teague*.[9] In contrast, we conclude that, in the present case, it was not clearly established at the time of the petitioner's plea that *Boykin* applied to pleas of not guilty by reason of mental disease or defect, such that a trial court would have been compelled to ensure that the petitioner's plea was knowing and voluntary.

Specifically, the federal court's holding that *Boykin* extends to pleas of not guilty by reason of mental disease or defect relies solely on *Miller* v. *Angliker*, supra, 848 F.2d 1312, and *United States* v. *Brown*, supra, 428 F.2d 1100, neither of which are applicable to the present case. We turn first to *Miller*. That case was decided in 1988 and as such, did not exist at the time of the petitioner's plea in 1984 for the purposes of our *Teague* analysis. *Miller* v. *Angliker*, supra, 1312.[10] Further, as a decision of the United States Court of Appeals for the Second Circuit, *Miller* was not binding on Connecticut state courts and, thus, the trial court was not bound by that decision. *Saffle* v. *Parks*, 494 U.S. 484, 488, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990). Even if *Miller* had existed at the time of the petitioner's plea in 1984, and was binding authority on the trial court, on its merits, the case nevertheless does not support the petitioner's claims. In *Miller*, the petitioner contested his detention alleging, inter alia, that the state had withheld exculpatory information in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). See *Miller* v. *Angliker*, supra, 1317. Although the Second Circuit analyzed the similarities between pleading guilty and pleading not guilty by reason of mental disease or defect, the court's holding that *Brady* is "also applicable where the defendant has pleaded not guilty by reason of insanity"; id., 1320; does not establish squarely that a trial court must ensure that a defendant's plea of not guilty by reason of mental disease or defect is knowing and voluntary.

Turning next to *United States* v. *Brown*, supra, 428 F.2d 1100, as an initial matter, that case is a decision of the United States Court of Appeals for the District of Columbia Circuit, and as such, is not binding on Connecticut courts. Moreover, although *Brown* existed at the time of the petitioner's plea, the merits of *Brown* do not provide persuasive support for his constitutional claim. In *Brown*, the petitioner challenged his confinement alleging, inter alia, that the trial court failed to canvass him pursuant to rule 11 of the Federal Rules of Criminal Procedure. Id., 1101–1102. Relying entirely on Federal Rules of Criminal Procedure, the District of Columbia Circuit held that rule 11, which required courts to canvass defendants who pleaded guilty, also applies to a defendant who "seeks to waive trial on all issues except insanity . . . ." Id., 1103. Although more closely related to the claim regarding the petitioner's plea in the present case, *Brown* would not have compelled a Connecticut trial court as a matter of constitutional law to ensure that the petitioner's plea was knowing and voluntary, as it rested exclusively on the Federal Rules of Criminal Procedure, rather than the due process clause.

As we stated in *Duperry* v. *Solnit*, supra, 261 Conn. 323, "[n]either *Miller* nor *Brown* compel the result the petitioner in the present case now seeks," namely, that

we should hold that the petitioner's claim regarding the knowing and voluntary nature of his plea is not barred by *Teague* because, for a habeas court to afford relief, it would not need to announce a new constitutional rule of criminal procedure but, rather, merely apply the principle set forth in *Boykin* to pleas of not guilty by reason of mental disease or defect. At the time of the petitioner's plea, *Boykin* existed, but there was no precedent extending its holding to the unique area of law surrounding the affirmative defense of mental disease or defect.

Although merely applying an existing principle to the facts of a case is not considered to be a " 'new rule' " in contravention of *Teague*, the act of expanding an existing principle establishes a new constitutional rule of criminal procedure. *Thiersaint* v. *Commissioner of Correction*, supra, 316 Conn. 103–104. For example, in *Thiersaint*, we considered whether the rule announced in *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), namely, that counsel must advise defendants of potential deportation and immigration consequences as a result of a guilty plea, applied retroactively on collateral review. Although the petitioner argued that the rule in *Padilla* was merely an extension of the principle governing ineffective assistance of counsel claims under *Strickland* v. *Washington*, supra, 466 U.S. 687, we were not persuaded. We held that *Padilla* addressed an unsettled question— namely "whether attorneys are *constitutionally required* to advise noncitizen criminal defendants of the deportation consequences of a guilty plea . . . ." (Emphasis in original.) *Thiersaint* v. *Commissioner of Correction*, supra, 121. Thus, because the court in *Padilla* created a rule to answer a question beyond the scope of *Strickland*, we held that the "rule announced in *Padilla* was new, and not merely an extension of the rule articulated in *Strickland*." (Footnote omitted.) Id., 121–22.

Similar to *Thiersaint*, in the present case, the rule the petitioner seeks on habeas review would require the court not merely to apply the *Boykin* principle to the underlying facts, but also to expand that principle beyond the scope of guilty pleas to include pleas of not guilty by reason of mental disease or defect. The court in *Boykin* specifically announced a rule that all guilty pleas must be knowing and voluntary to comport with due process. See *Boykin* v. *Alabama*, supra, 385 U.S. 242–44. It explained that this rule was necessary to protect certain rights defendants surrender upon entering a guilty plea. Id. Although some courts have discussed the similarities between guilty pleas and pleas of not guilty by reason of mental disease or defect; see *Miller* v. *Angliker*, supra, 848 F.2d 1319–20; *United States* v. *Brown*, supra, 428 F.2d 1102–1104; without binding authority extending the holding in *Boykin* to pleas of not guilty by reason of mental disease or defect,

the habeas court properly determined that it would have had to announce a new constitutional rule of criminal procedure. As such, the trial court in this case would not "have felt compelled . . . to conclude that the rule [the petitioner] seeks was required by the [c]onstitution." *Saffle* v. *Parks*, supra, 494 U.S. 488. Accordingly, we conclude that for the habeas court to afford the petitioner relief on the claim regarding his plea, it would have had to establish a new constitutional rule of criminal procedure that all pleas of not guilty by reason of mental disease or defect must be knowing and voluntary to comport with due process.

Having concluded that the habeas court would have had to depart from prior constitutional jurisprudence to afford relief to the petitioner, we now turn to the petitioner's claim that a new rule that all pleas of not guilty by reason of mental disease or defect must be made knowingly and voluntarily falls within the second *Teague* exception, which is for watershed constitutional rules of criminal procedure.[11] See *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 63, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*, U.S. , 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016). The petitioner claims that a rule that pleas of not guilty by reason of mental disease or defect must be made knowingly and voluntarily is a watershed rule of criminal procedure because it implicates the fundamental fairness and accuracy of the criminal proceeding. The petitioner concedes that the proposed rule does not affect the accuracy of the determination of guilt, as an affirmative defense of mental disease or defect requires a defendant first to plead not guilty. He contends nevertheless that the rule would affect the accuracy of his decision to enter a plea of not guilty, followed by an affirmative defense of mental disease or defect, which he claims is akin to a guilty plea. We disagree and hold that the proposed rule does not fall within the watershed exception to *Teague*.

The "watershed" exception to *Teague* v. *Lane*, supra, 489 U.S. 311, is reserved for those " 'rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle* v. *Parks*, supra, 494 U.S. 495. Beyond fundamental fairness, the new rule also must constitute a procedure "without which the likelihood of an accurate conviction is seriously diminished." *Teague* v. *Lane*, supra, 313. Further, because "such [a procedure] would be so central to an accurate determination of innocence or guilt . . . it [is] unlikely that many such components of basic due process have yet to emerge." Id. One watershed rule frequently cited is *Gideon* v. *Wainwright*, 372 U.S. 335, 344–45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), which established a rule that criminal defendants have a right to be represented by counsel.[12] *Saffle* v. *Parks*, supra, 495.

Although we recognize some similarities between guilty pleas and pleas of not guilty by reason of mental disease or defect, we conclude that a rule requiring the election of the latter to be knowing and voluntary is not "central to an accurate determination of innocence or guilt . . . ." *Teague* v. *Lane*, supra, 489 U.S. 313. As we stated *Duperry* v. *Solnit*, supra, 261 Conn. 326, "[t]he right to counsel recognized in *Gideon* [which often is cited as a watershed rule of criminal procedure] not only helps to ensure the fundamental fairness of a criminal proceeding but also helps to protect the defendant from an inaccurate determination of guilt." In contrast, the rule the petitioner seeks to have us adopt does not implicate the accuracy of the determination of guilt, as he pleaded not guilty and was acquitted of all charges on the basis of his affirmative defense. Accordingly, the rule that pleas of not guilty by reason of mental disease or defect must be entered knowingly and voluntarily does not satisfy the *Teague* watershed exception. Thus, we conclude that the habeas court properly denied the petitioner relief on his claim regarding the knowing and voluntary nature of his plea.

## II

We next address the petitioner's claim that the habeas court improperly determined that his defense counsel rendered effective assistance in the underlying criminal proceedings. Specifically, he claims that his defense counsel was ineffective for failing to research the law concerning the affirmative defense of mental disease or defect and failing to inform him that he could be confined beyond the maximum twenty-five year period if that defense was successful. In response, the respondent contends that the petitioner did not satisfy his factual burden to demonstrate that his defense counsel's actions constituted deficient performance and prejudiced him. We agree with the respondent.

The record reveals the following additional relevant facts. Relevant to the petitioner's ineffective assistance of counsel claim, it is important to note the lack of evidence presented in the habeas court. First, no transcripts exist of the underlying criminal proceedings, as they since have been destroyed. Second, and most important is that the petitioner's defense counsel, Richard A. Kelley, died prior to the habeas trial. At the habeas trial, three witnesses testified: Attorney Raymond Canning, Attorney John Watson, and the petitioner.

Canning testified that he had one interaction with the petitioner and Kelley, which took place right after the petitioner was arrested. Kelley, who was running late to work one morning, had called Canning and asked him to meet with the petitioner. Once Kelley arrived, he, Canning and the petitioner discussed the affirmative defense of mental disease or defect. At that time, the

petitioner was advised that, although he could serve a maximum of twenty-five years, he would likely serve less time. Canning specifically testified that he and Kelley advised the petitioner that he would not be held beyond the maximum twenty-five years. Further, Canning stated that the petitioner's biggest concern was how much time he would serve. He testified that, at the time of his meeting with Kelley and the petitioner, the board did not exist, and that before the board's existence, "[t]he maximum was the maximum," but once the board was created, an individual could remain committed for a longer period of time than the initial maximum commitment period. Finally, Canning confirmed that this brief meeting with Kelley and the petitioner had been his only involvement in the matter.

Next, Watson, who has been a public defender since 1980, testified about what a reasonable attorney would have done in his or her representation of the petitioner. He noted that, at the time of the petitioner's plea, the revision of General Statutes § 53a-47 then in effect provided that the petitioner could be committed beyond the maximum of twenty-five years.[13] He testified, however, that prior to the creation of the board, it was typical for an acquittee to be confined for a period shorter than the maximum sentence and that it would have been a very unusual case for an acquittee to serve a longer term. Further, Watson testified that the petitioner should have been informed that the maximum confinement would be twenty-five years, at which time it would then be his burden to prove that he was no longer mentally ill in order to secure his release, but that ultimately, his commitment could be extended at the petition of the state. He opined that, had the petitioner been informed of his options and pursued a different defense, there was a reasonable probability that he would have been confined for less than twenty-five years. Watson further testified that he was unaware of any research that Kelley had conducted after his initial meeting with the petitioner, and did not know of anyone he might have consulted.

Lastly, the petitioner testified. He stated that Kelley never told him that if he successfully asserted the affirmative defense of mental disease or defect, he nevertheless could remain committed for more than twenty-five years. He testified that, although he recalled discussing his options, Kelley had told him that the worst case scenario would be that he would be committed for about one year and then he would be released. The petitioner recalled meeting with Kelley at least five times from his arrest in 1983 through his commitment in March, 1985. Ultimately, he stated that, had he known that he could have been held beyond twenty-five years, he would not have pursued the same defense.

The habeas court, in its memorandum of decision, determined that the petitioner failed to establish both

deficient performance and prejudice under the standard of *Strickland* v. *Washington*, supra, 466 U.S. 687, and, thus, failed to demonstrate that counsel rendered effective assistance.

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . .

"A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland* . . . . Under *Strickland*, the petitioner has the burden of demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the second prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied." (Citations omitted; internal quotation marks omitted.) *Thiersaint* v. *Commissioner of Correction*, supra, 316 Conn. 100– 101. Further, "[a] court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 91, 52 A.3d 655 (2012).

"The issue of whether the representation that a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, the question requires plenary review unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 319 Conn. 548, 554, 126 A.3d 538 (2015), cert. denied sub nom. *Semple* v. *Davis*, U.S. , 136 S. Ct. 1676, 194 L. Ed. 2d 801 (2016). In our review of this claim, we afford great deference to the habeas court's factual findings, which underlie its legal conclusions. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Thus, [t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility

of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 604, 103 A.3d 954 (2014).

Turning to the performance prong of *Strickland*, in its memorandum of decision, the habeas court was not convinced that Kelley had made inaccurate representations to the petitioner regarding the maximum amount of time for which he could be confined and, thus, concluded that the petitioner failed to establish the deficient performance prong of *Strickland* for two reasons. First, the habeas court found that Canning's testimony lacked evidentiary weight and was of little probative value. His interactions with the petitioner and Kelley pertained only to one meeting, which was held just after the petitioner's arrest. As such, he could not testify as to any other conversations between the petitioner and Kelley, including those in closer proximity to the assertion of the petitioner's affirmative defense. Additionally, the habeas court noted the difficulty an individual would have in recalling details from a single meeting that had taken place thirty years prior.

Second, the habeas court found that the petitioner's testimony was "uncompelling," "largely self-serving and unsupported." After observing the petitioner testify, the habeas court noted that the petitioner had difficulty remembering when he had met with his attorneys and with which attorneys he had met. Significantly, the habeas court pointed out that the petitioner himself conceded that his recollection was "iffy" of the initial meeting between himself, Canning, and Kelley, during which he claimed that he was advised that if he pursued a defense of mental disease or defect, that he could not be committed for more than twenty-five years. Thus, the habeas court concluded that, on the basis of the extremely limited evidence offered, the petitioner failed to meet his burden on the deficient performance prong of *Strickland*.

On the basis of our review of the evidence presented at the habeas trial, giving deference to the habeas court's factual findings; see *Sanchez* v. *Commissioner of Correction*, supra, 314 Conn. 604; we hold that the habeas court properly determined that the petitioner failed to establish that Kelley's conduct fell below an objectively reasonable standard because the petitioner did not establish factually that Kelley misadvised him regarding the fact that he could remain committed beyond the maximum term of twenty-five years confinement if he successfully pursued a defense of mental disease or defect. Specifically, we defer to the habeas court's credibility determination that Canning's testimony was "of little probative value" and that the peti-

tioner's testimony was "largely self-serving." What remains is a record devoid of any credible factual indication that Kelley did in fact misadvise the petitioner. Accordingly, we conclude that the habeas court properly concluded that the petitioner failed to establish that his counsel's actions fell below an objectively reasonable standard.

The judgment is affirmed.

In this opinion ROGERS, C. J., and ZARELLA, EVELEIGH, McDONALD and ESPINOSA, Js., concurred.

* December 22, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The habeas court granted the petitioner's petition for certification to appeal pursuant to General Statutes § 52-470 (b). The petitioner subsequently appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[2] The petitioner has filed numerous challenges to his extended confinement. Specifically, on October 23, 2003, the petitioner filed his first application for discharge from custody, which the court, *Foley, J.*, denied. The petitioner filed a second application for discharge on March 28, 2007, which the trial court, *Swords, J.*, denied.

In 2009, the state filed a petition for an order of continued commitment, in response to which the petitioner filed a motion to dismiss. After a hearing on the matter, the trial court, *Swords, J.*, concluded that the petitioner posed "an imminent and substantial risk of harm to himself or others," denied the petitioner's motion to dismiss, and granted the state's order for continued commitment. Following an unsuccessful appeal from that decision, in which we held that the trial court lacked jurisdiction over the petitioner's due process claim that his plea of not guilty by reason of mental disease or defect was not knowing, intelligent, or voluntary; *State* v. *Dyous*, 307 Conn. 299, 335, 53 A.3d 153 (2012); the petitioner filed the habeas petition underlying the present appeal.

[3] The petitioner also alleged that his due process rights were violated because the trial court did not canvass him regarding his decision to plead not guilty by reason of mental disease or defect. He subsequently withdrew that claim at the habeas trial.

[4] The habeas court also denied the respondent's claim that the petitioner's claims were barred by the special defense of laches. This determination is not at issue in this appeal.

[5] The undisputed facts underlying *Solnit and Kirk* are strikingly similar to the facts in the present appeal. In April, 1988, Duperry was arrested and charged with arson and manufacturing bombs in connection with the explosion of a pipe bomb at the Institute of Living in Hartford. *Duperry* v. *Solnit*, supra, 261 Conn. 312–13. In December, 1988, he subsequently asserted an affirmative defense based on mental disease or defect and elected an unopposed, nonadversarial bench trial. Id., 313–14. After that proceeding, the trial court found Duperry not guilty by reason of mental disease or defect and ordered him committed to the custody of the board for a maximum term of twenty-five years. Id., 314–15.

Nearly one decade later, Duperry filed a petition for a writ of habeas corpus in the Superior Court, alleging, inter alia, that his due process rights were violated, as his plea was not made knowingly, intelligently, and voluntarily because he did not understand the consequences of raising the affirmative defense of mental disease or defect. Id., 315. The habeas court then granted Duperry's petition, leading the commissioner to appeal to this court. Id.

[6] We also, however, exercised our supervisory authority to conclude that, "in future cases when a defendant pleads not guilty by reason of mental disease or defect and the state substantially agrees with the defendant's claim of mental disease or defect, with the result that the trial essentially is not an adversarial proceeding, the trial court must canvass the defendant to ensure that he or she fully understands the consequences of his or her plea, particularly with respect to the length of time the defendant could be confined." *Duperry* v. *Solnit*, supra, 261 Conn. 312.

[7] In the alternative, the petitioner contends that, if this court "finds that the Supreme Court did in fact rule that the claim was precluded by *Teague*

in [*Solnit*] this court [should] revisit that issue and find that the principle that a plea of [not guilty by reason of mental disease or defect] must be knowing and voluntary should apply at the time that the petitioner entered his plea and can be reviewed by this court." Because we assume that *Solnit* has no preclusive effect with respect to the petitioner's claim regarding the knowing and voluntary nature of his plea, for the purposes of this appeal, we decline the petitioner's suggestion to revisit the issue.

[8] Because the claim is procedurally barred, we do not reach the merits of the petitioner's claim that all defenses premised on mental disease or defect must be elected knowingly and voluntarily to comport with due process.

[9] Although we usually afford deference to the federal courts when interpreting federal law; see, e.g., *Szewczyk* v. *Dept. of Social Services*, 275 Conn. 464, 475 n.11, 881 A.2d 259 (2005); we decline to do so here because the precedent at the time of the present petitioner's plea plainly does not support the court's decision in *Kirk*.

[10] In contrast, *Miller* existed at the time of Duperry's plea, which was entered in December, 1988, for the purposes of *Duperry* v. *Kirk*, supra, 563 F. Supp. 2d 370.

[11] The petitioner does not claim that this rule would fall within the first exception to *Teague*, which "permits the retroactive application of a new rule if the rule places a class of private conduct beyond the power of the [s]tate to proscribe . . . or addresses a substantive categorical guarante[e] accorded by the [c]onstitution, such as a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense." (Citation omitted; internal quotation marks omitted.) *Saffle* v. *Parks*, supra, 494 U.S. 494. As such, our analysis is limited to the second *Teague* exception.

[12] We rarely have addressed the issue of whether a new constitutional rule of criminal procedure established on collateral review in contravention of *Teague*, nevertheless may be applied retroactively because the rule fell within the watershed exception. Most recently, we conducted a *Teague* analysis in *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 69. In that case, we held that the rule set forth in *Miller* v. *Alabama*,      U.S.     , 132 S. Ct. 2455, 2464–65, 2468, 183 L. Ed. 2d 407 (2012), namely that "before a sentence of life without the possibility of parole may be imposed on a juvenile homicide offender, a sentencing authority must engage in an individualized sentencing process that accounts for the mitigating circumstances of youth and its attendant characteristics"; *Casiano* v. *Commissioner of Correction*, supra, 59; was a watershed rule of criminal procedure for *Teague* purposes. Id., 62. Because the *Miller* rule pertained to sentencing, rather than the accuracy of convictions, we observed that, "[i]n the sentencing context, where the issue is no longer one of guilt or innocence, the second criterion asks whether the new procedure is central to an accurate determination that the sentence imposed is a proportionate one." Id., 69. The rule established in *Miller* required courts to consider the mitigating factors of youth in sentencing and, thus, would be central to ensuring that sentences imposed on minors would be proportionate to their age and crime. Thus, we held that the rule was a watershed rule of criminal procedure and applied it retroactively on collateral review. Id., 71. *Casiano* does not inform our decision in the present case, as it is unique to sentencing, and as such is inapplicable to the rule proposed by the petitioner that addresses the knowing and voluntary nature of his plea.

[13] At the time of the petitioner's plea and commitment, the board did not exist. As such, he was committed pursuant to General Statutes (Rev. to 1985) § 53a-47. Under that statute, however, it was clear that the "state's attorney . . . may petition the court for an order of further confinement on the grounds that release of the person would constitute a danger to life or person." General Statutes (Rev. to 1985) § 53a-47 (d).