******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ALFREDO GONZALEZ *v.* COMMISSIONER OF CORRECTION
## (AC 43815)

Alvord, Prescott and Suarez, Js.

*Syllabus*

The petitioner, who had been convicted of several crimes in connection with the shooting death of the victim, sought a writ of habeas corpus, claiming, inter alia, that his trial counsel rendered ineffective assistance for having followed a strategy that was based on an inaccurate statement of the law. The petitioner specifically asserted that his right to due process was violated because the statutory (§§ 53a-8 and 53a-55a) scheme underlying his conviction of manslaughter in the first degree with a firearm as an accessory does not require the state to prove, as an essential element of accessorial liability, that he intended the principal's use of a firearm. The habeas court concluded that the petitioner failed to show how §§ 53a-8 and 53a-55a violated due process by shifting to the defense the burden of proving an essential element of accessorial liability, and, thus, that the petitioner had failed to prove that his counsel rendered ineffective assistance. The court denied the petitioner's habeas petition, and, on the granting of certification, he appealed to this court. On appeal, the respondent Commissioner of Correction contended that the petitioner's claim was procedurally barred pursuant to *Teague* v. *Lane* (489 U.S. 288), which precludes a court on collateral review from declaring a new constitutional rule after a conviction has become final. *Held* that the habeas court properly denied the petitioner's habeas petition, as state and federal precedent at the time his conviction became final made clear that no constitutional rule existed then that required the state to prove, as an essential element of accessorial liability for manslaughter in the first degree with a firearm, that the accessory intended the principal's use of the firearm; moreover, the rule the petitioner sought to establish was not, as he claimed, an application of existing constitutional principles, as the United States Supreme Court in *Patterson* v. *New York* (432 U.S. 197) had held prior to his conviction that it was constitutionally permissible to require criminal defendants to prove affirmative defenses that relate to culpability, which the legislature has required pursuant to statute (§ 53a-16b); furthermore, the rule the petitioner sought to establish was procedural in nature pursuant to *Teague* because it focused on the manner by which an accessory can be deemed culpable for the use of a firearm by others and, thus, contrary to his assertion, did not place a category of private conduct beyond the power of the state to punish so as to satisfy that exception in *Teague* to the prohibition against establishing new constitutional rules of criminal procedure in collateral proceedings, as the rule the petitioner sought would invalidate the provisions in §§ 53a-16b and 53a-55a that make a criminal defendant's lack of knowledge of the firearm an affirmative defense, rather than an element of the offense.

Argued March 9—officially released June 29, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*W. Theodore Koch III*, assigned counsel, for the appellant (petitioner).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attor-

ney, and *Marc G. Ramia*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Alfredo Gonzalez, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The habeas court granted his petition for certification to appeal. On appeal, the petitioner claims that the habeas court improperly rejected his claim that his right to due process under the federal and state constitutions was violated because General Statutes §§ 53a-8[1] and 53a-55a[2] do not require the state to prove, as an essential element of accessorial liability for manslaughter in the first degree with a firearm, that he intended the principal's use, carrying or threatened use of a firearm. We affirm the judgment of the habeas court.

Our Supreme Court on direct appeal summarized the underlying facts as reasonably found by the jury.[3] "The [petitioner] had engaged in an ongoing feud with the victim, Samuel Tirado.[4] On the evening of May 5, 2006, the [petitioner] and three friends, Anthony Furs, Christian Rodriguez and Melvin Laguna, went out for the evening in Rodriguez' red GMC Yukon. They stopped briefly at one bar, and then decided to go to a bar named Bobby Allen's in Waterbury because they knew that the victim went there frequently, and they wanted to start a fight with him. En route to Bobby Allen's, the [petitioner] observed that there were two guns in the Yukon, in addition to a razor blade that he intended to use in that fight, and remarked that, if he had the money, he would give it to Furs to 'clap,' or shoot, the victim. Rodriguez, who also disliked the victim, then offered to pay Furs $1000 to shoot the victim, which Furs accepted.

"When they arrived at Bobby Allen's, the [petitioner] left the group briefly to urinate behind a nearby funeral home. When he rejoined the group, Furs gave the [petitioner] the keys to the Yukon and told him to go get the truck because the victim was nearby speaking with Rodriguez. The [petitioner] and Furs then drove a short distance toward Bobby Allen's in the Yukon, and Furs, upon spotting the victim and Rodriguez outside the bar, jumped out of the Yukon and shot the victim in the chest with a black handgun, mortally wounding him. Rodriguez and Laguna then fled the scene on foot, while Furs and the [petitioner] drove off in the Yukon to a friend's nearby apartment on South Main Street. Thereafter, with the assistance of friends, Furs[5] and the [petitioner] fled separately from the apartment, and the [petitioner] subsequently disposed of the gun, first by hiding it in a woodpile at his mother's home, and later by throwing it into Pritchard's Pond (pond) in Waterbury.

"Thereafter, Waterbury police officers investigating the shooting questioned the [petitioner] after arresting him on an outstanding motor vehicle warrant on May 6, 2006. The [petitioner] initially gave a statement deny-

ing any involvement in the incident. Subsequently, on May 15, 2006, the Waterbury police reinterviewed the [petitioner], at which time he admitted disposing of the gun by throwing it into the pond. The [petitioner] then accompanied the officers to the pond and showed them where he had thrown the gun, which enabled a dive team to recover it several days later.[6] After they returned to the police station, the [petitioner] gave the police a second statement admitting that he had lied in his initial statement and explaining his role in the events leading to and following the shooting.

"The state charged the [petitioner] in a six count substitute information with murder as an accessory in violation of § 53a-8 and General Statutes § 53a-54a (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, manslaughter in the first degree with a firearm as an accessory in violation of §§ 53a-8 and 53a-55a, conspiracy to commit assault in the first degree in violation of § 53a-48 and General Statutes § 53a-59 (a) (5), hindering prosecution in the second degree in violation of General Statutes § 53a-166, and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). The [petitioner] elected a jury trial. After evidence, the trial court denied the [petitioner's] motion for acquittal. The jury returned a verdict finding him not guilty of accessory to murder and conspiracy to commit murder, but guilty on all other counts. The trial court [*Miano, J.*] rendered a judgment of conviction in accordance with the jury's verdict and sentenced the [petitioner] to a total effective sentence of thirty-eight years imprisonment, with ten years of special parole." (Footnote in original; footnote omitted.) *State* v. *Gonzalez*, 300 Conn. 490, 492–95, 15 A.3d 1049 (2011).

The petitioner's sole claim on direct appeal to our Supreme Court was that "the trial court improperly instructed the jury regarding the elements of the offense of manslaughter in the first degree with a firearm as an accessory.[7] Specifically, the [petitioner] claim[ed] that accessorial liability under § 53a-8 encompasses both the specific intent to cause a result, in this case, to cause the victim serious physical injury, as well as the general intent to perform the physical acts that constitute the offense of manslaughter in the first degree with a firearm, including the use, carrying or threatened use of a firearm." (Footnote added; internal quotation marks omitted.) Id., 495.

Our Supreme Court rejected the petitioner's claim that the trial court improperly instructed the jury. Specifically, our Supreme Court concluded that the trial court's instruction conformed with *State* v. *Miller*, 95 Conn. App. 362, 896 A.2d 844, cert. denied, 279 Conn. 907, 901 A.2d 1228 (2006), which "properly articulated the elements of accessorial liability under § 53a-8 for manslaughter in the first degree with a firearm in viola-

tion of § 53a-55a," and declined the petitioner's "invitation to overrule that decision." *State* v. *Gonzalez*, supra, 300 Conn. 509–10. Moreover, our Supreme Court adopted the conclusion set forth in *Miller* that, "[w]hen a defendant is charged with a violation of § 53a-55a as an accessory, the state need not prove that the defendant intended the use, carrying or threatened use of the firearm."[8] Id., 510; *State* v. *Miller*, supra, 362. Accordingly, our Supreme Court affirmed the petitioner's conviction. *State* v. *Gonzalez*, supra, 510.

Thereafter, the self-represented petitioner filed a petition for a writ of habeas corpus in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 2254. In his one count habeas petition, the petitioner alleged that "Connecticut's statutory scheme of manslaughter in the [first] [d]egree with a [f]irearm violates the [d]ue [p]rocess [c]lause of the [fifth] and [fourteenth] amend[ments] [t]o [the] [United States constitution]. . . . In the facts supporting this ground, the petitioner contend[ed] that . . . § 53a-55a is violative of the United States [c]onstitution in that it does not require the state to prove an essential element of the substantial crime charged: the intent to use a firearm. . . . The respondents move[d] to dismiss the petition on the ground that the petitioner ha[d] not exhausted his state court remedies as to the sole ground in the petition. The respondents argue[d] that the petitioner did not fairly present the federal constitutional challenge raised in ground one of the . . . petition in his direct appeal to [our] Supreme Court. Thus, [the respondents argued that] the claim has not been exhausted." (Citation omitted; internal quotation marks omitted.) *Gonzalez* v. *Commissioner*, United States District Court, Docket No. 3:11cv1012 (VLB) (D. Conn. July 20, 2012). The federal District Court, Bryant, J., dismissed his petition for a writ of habeas corpus without prejudice for failure to exhaust state court remedies. Id.

The petitioner then filed a petition for a writ of habeas corpus in our Superior Court. In his amended habeas petition, the petitioner alleged that his "trial counsel was ineffective for following a strategy that was based on an inaccurate statement of the law, i.e., that the state was required to prove specific intent that a firearm be used." The habeas court, *Cobb, J.*, denied his amended petition for a writ of habeas corpus; *Gonzalez* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-11-4004210-S (March 17, 2014); and this court dismissed his appeal therefrom. *Gonzalez* v. *Commissioner of Correction*, 160 Conn. App. 902, 125 A.3d 296 (2015).

On February 13, 2015, the petitioner filed the present petition for a writ of habeas corpus. In his third amended habeas petition, the petitioner set forth the following four counts, in which he alleged (1) that

"§§ 53a-8 and 53a-55a—accessory to commit manslaughter in the first degree with a firearm—combine in a way that violates the due process clause of the [fifth] and [fourteenth] amend[ments] to the [United States constitution] as well as article first, § [8], of the Connecticut constitution in that they do not require the state to prove an essential element of the substantial crime charged: the intent to use a firearm" (due process claim), (2) ineffective assistance of trial counsel,[9] (3) ineffective assistance of appellate counsel,[10] and (4) ineffective assistance of prior state habeas counsel.[11] In his return, with respect to each of the substantive grounds set forth in the third amended habeas petition, the respondent, the Commissioner of Correction, left the petitioner to his proof.

Following a trial, the habeas court, *Bhatt*, *J.*, first determined that the "resolution of the petitioner's claim in count one [is] dispositive of the claims in the remaining counts . . . ." Thus, the court "focuse[d] its discussion on the question of whether there is a . . . due process violation in our statutory scheme for accessory to manslaughter in the first degree with a firearm." Ultimately, the court concluded that "the petitioner has not shown how our statutory scheme violates the due process clause by impermissibly shifting the burden of an essential element to the defense and has failed in his burden of proving ineffective assistance of counsel." Accordingly, the court rendered judgment denying his amended petition for a writ of habeas corpus. Thereafter, the petitioner filed a petition for certification to appeal from the judgment of the habeas court, which was granted. This appeal followed.[12]

On appeal, the petitioner claims that the habeas court improperly rejected his claim that his right to due process under the federal and state constitutions was violated because §§ 53a-8 and 53a-55a do not require the state to prove, as an essential element of accessorial liability for manslaughter in the first degree with a firearm, that he intended the principal's use, carrying or threatened use of a firearm. Specifically, the petitioner maintains that, "[t]o convict an individual of the offense of accessory to manslaughter in the first degree with a firearm, in violation of . . . §§ 53a-8 [and] 53a-55a, in accord with due process as guaranteed by the state and federal constitutions, the state must prove that (1) with the intent to cause serious physical injury to another person, the principal causes the death of such person, (2) in the commission of such offense, the principal uses a firearm, and (3) *the accessory intends that the principal use a firearm*." (Emphasis added.)

The respondent contends that the principles enunciated in *Teague* v. *Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), preclude this court from establishing the new constitutional rule of criminal procedure proposed by the petitioner in a collateral habeas

action. Specifically, the respondent argues that the petitioner "continues to seek . . . to have a new constitutional right declared that requires, as a matter of due process, the engrafting of a requirement that the state prove that an accessory possess the intent that a firearm be used in order to be convicted of the crime of manslaughter in the first degree with a firearm. While a court may declare new constitutional rules in a direct appeal from a criminal conviction, it lacks such authority to do so once a conviction becomes final." In reply to the respondent's contention, the petitioner maintains that "*Teague* is inapplicable" because "existing precedent dictated the result [he] seeks; therefore, it is not a new rule . . . ." Alternatively, the petitioner argues that the rule he seeks satisfies the first exception to the general prohibition against establishing new constitutional rules of criminal procedure in collateral proceedings as set forth in *Teague* v. *Lane*, supra, 311, because it "places a category of private conduct beyond the power of the state to punish." We agree with the respondent and conclude that the petitioner's due process claim is procedurally barred by *Teague*.[13]

"When considering the potential retroactive application of a new rule of constitutional criminal procedure, we apply the rule of *Teague* v. *Lane*, supra, 489 U.S. 288. . . . In *Teague*, the United States Supreme Court held that new constitutional rules of criminal procedure should not be established in or applied to collateral proceedings, including habeas corpus proceedings. [Id.], 315–16. A rule is considered to be new when it breaks new ground or imposes a new obligation on the [s]tates or the [f]ederal [g]overnment. . . . To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final. . . . Id., 301. Further, a holding is not so dictated . . . unless it would have been apparent to all reasonable jurists. . . . On the other hand, *Teague* also made clear that a case does *not* announce a new rule, [when] it [is] merely an application of the principle that governed a prior decision to a different set of facts." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Dyous* v. *Commissioner of Mental Health & Addiction Services*, 324 Conn. 163, 173–74, 151 A.3d 1247 (2016).

"With two exceptions, a new rule will not apply retroactively to cases on collateral review. *Teague* v. *Lane*, supra, 489 U.S. 311–13. First, if the new rule is substantive, that is, if the rule places certain kinds of primary, private conduct beyond the power of the criminal law-making authority to proscribe . . . it must apply retroactively. Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him. . . .

"Second, if the new rule is procedural, it applies retroactively if it is a watershed [rule] of criminal procedure . . . implicit in the concept of ordered liberty . . . meaning that it implicat[es] the fundamental fairness and accuracy of [a] criminal proceeding. . . . Watershed rules of criminal procedure include those that raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." (Citations omitted; internal quotation marks omitted.) *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 62–63, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*, 577 U.S. 1202, 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016).

The first step in our *Teague* analysis is to determine whether the habeas court in the present case could have afforded the petitioner relief on the basis of established jurisprudence governing his claim or whether affording such relief would have required the habeas court to establish a new constitutional rule of criminal procedure. See *Dyous* v. *Commissioner of Mental Health & Addiction Services*, supra, 324 Conn. 174–75. An analysis of the precedent existing at the time the petitioner's conviction became final in 2011 makes clear that no constitutional rule existed at that time that required the state to prove, as an essential element of accessorial liability for manslaughter in the first degree with a firearm, that the accessory intended the principal's use of a firearm.

We begin with an analysis of our state precedent existing at the time the petitioner's conviction became final. In the petitioner's direct appeal, our Supreme Court adopted the conclusion initially set forth in *State* v. *Miller*, supra, 95 Conn. App. 362, that "the state need not prove that the [petitioner] intended the [principal's] use, carrying or threatened use of the firearm." (Internal quotation marks omitted.) *State* v. *Gonzalez*, supra, 300 Conn. 510. Our Supreme Court noted the affirmative defense provided by General Statutes § 53a-16b, which provides in relevant part that, "[i]n any prosecution for an offense under § 53a-55a . . . in which the defendant was not the only participant, it shall be an affirmative defense that the defendant: (1) Was not armed with a pistol, revolver, machine gun, shotgun, rifle or other firearm, and (2) had no reasonable ground to believe that any other participant was armed with such a weapon. Section 53a-16b is consistent with other areas wherein the legislature has provided that the state must prove the essential elements of the crime, and has left it to the defendant to mitigate[14] his criminal culpability or sentencing exposure via an affirmative defense, particularly with respect to areas that uniquely are within the defendant's knowledge." Id., 508. This precedent remains binding on this court today.[15] Accordingly, our review of state precedent existing at the time the petitioner's conviction became final reveals that the consti-

tutional rule the petitioner seeks would not have been apparent to all reasonable jurists and, as such, was not dictated by established precedent. See *Dyous* v. *Commissioner of Mental Health & Addiction Services*, supra, 324 Conn. 173–74.

We next consider the landscape of federal precedent existing at the time the petitioner's conviction became final. The petitioner maintains that United States Supreme Court precedent existing at the time his conviction became final dictated the result he seeks. Specifically, he argues that his conviction became final "after *Mullaney* v. *Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, [44 L. Ed. 2d 508] (1975), and *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, [147 L. Ed. 2d 435] (2000), were well established," and that "[t]he rationale of these two cases alone implores the review that reveals the due process violation." We conclude that the petitioner's reliance on these cases is misplaced.

In *Mullaney*, the United States Supreme Court declared a Maine statutory scheme unconstitutional.[16] The Maine Supreme Judicial Court had held that, in prosecuting a charge of murder, "the prosecution could rest on a presumption of implied malice aforethought and require the defendant to prove that he had acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter." *Mullaney* v. *Wilbur*, supra, 421 U.S. 688. The issue before the court was "whether the Maine rule requiring the defendant to prove that he acted in the heat of passion on sudden provocation accords with due process." Id., 692. The United States Supreme Court held that this statutory scheme improperly shifted the burden of persuasion from the prosecutor to the defendant and was therefore a violation of the requirement of due process that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged, as stated in *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). *Mullaney* v. *Wilbur*, supra, 701.

In *Apprendi*, the United States Supreme Court declared a New Jersey statutory scheme unconstitutional.[17] The New Jersey statutory scheme "allows a jury to convict a defendant of a second-degree offense based on its finding beyond a reasonable doubt that he unlawfully possessed a prohibited weapon; after a subsequent and separate proceeding, it then allows a judge to impose punishment identical to that New Jersey provides for crimes of the first degree, N.J. Stat. Ann. § 2C:43-6 (a) (1) (West 1999), based upon the judge's finding, by a preponderance of the evidence, that the defendant's purpose for unlawfully possessing the weapon was to intimidate his victim on the basis of a particular characteristic the victim possessed." (Internal quotation marks omitted.) *Apprendi* v. *New Jersey*, supra, 530 U.S. 491. The issue before the court was "whether the [d]ue [p]rocess [c]lause of the [f]our-

teenth [a]mendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from [ten] to [twenty] years be made by a jury on the basis of proof beyond a reasonable doubt." Id., 469. The United States Supreme Court held that, in accordance with due process, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., 490. The court reasoned that the New Jersey statutory scheme was unconstitutional because it "runs directly into our warning in *Mullaney* that [*In re*] *Winship* is concerned as much with the category of substantive offense as with the degree of criminal culpability assessed." (Internal quotation marks omitted.) Id., 494–95.

The respondent cites *Patterson* v. *New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977) for the proposition that "due process does not mandate that the state prove that an accessory to a crime intend that every aggravating element be committed by the principal." In *Patterson*, the United States Supreme Court declined to declare a New York statute unconstitutional.[18] The New York statute provides that a defendant charged with murder can prove as "an affirmative defense . . . that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation—which, if proved by a preponderance of the evidence, would reduce the crime to manslaughter . . . ." Id., 206. The issue before the court was "the constitutionality under the [f]ourteenth [a]mendment's [d]ue [p]rocess [c]lause of burdening the defendant in a New York [s]tate murder trial with proving the affirmative defense of extreme emotional disturbance as defined by New York law." Id., 198. The United States Supreme Court recognized that "the long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant"; id., 211; and "decline[d] to adopt as a constitutional imperative, operative countrywide, that a [s]tate must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." Id., 210. The court reasoned that the New York statute was constitutional because it "does not serve to negat[e] any facts of the crime which the [s]tate is to prove in order to convict [a defendant] of murder. It constitutes a separate issue on which the defendant is required to carry the burden of persuasion." Id., 206–207.

The court in *Patterson* distinguished its holding from *Mullaney*, stating that "[t]here is some language in *Mullaney* that has been understood as perhaps construing the [d]ue [p]rocess [c]lause to require the prosecution to prove beyond a reasonable doubt any fact affecting 'the degree of criminal culpability.' . . . It is said that such a rule would deprive legislatures of any discretion whatsoever in allocating the burden of proof . . . .

The [c]ourt did not intend *Mullaney* to have such far-reaching effect." (Citations omitted.) Id., 214–15 n.15. The court clarified that, under *Mullaney*, "a [s]tate must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. . . . Such shifting of the burden of persuasion with respect to a fact which the [s]tate deems so important that it must be either proved or presumed is impermissible under the [d]ue [p]rocess [c]lause." Id., 215.

Our review of the United States precedent existing at the time the petitioner's conviction became final reveals that the rule the petitioner seeks would not have been apparent to all reasonable jurists and, as such, was not dictated by established precedent. See *Dyous* v. *Commissioner of Mental Health & Addiction Services*, supra, 324 Conn. 173–74. First, the functioning of the statutes at issue in *Mullaney* and *Apprendi* are distinguishable from that of the statutes at issue in the present case. The statutes at issue in the present case function to omit proof of any particular mental state of the principal or accomplice with respect to the use, carrying or threatened use of a firearm. See *State* v. *Miller*, supra, 95 Conn. App. 375 (proof of use, carrying or threatened use of firearm "is not encompassed within the dual intent requirement of § 53a-8, but rather is merely an aggravating circumstance that does not require proof of any particular mental state"). Unlike the statutes at issue in *Mullaney* and *Apprendi*, the statutes at issue here do not provide that "the prosecution could rest on a presumption"; *Mullaney* v. *Wilbur*, supra, 421 U.S. 688; or that "a judge [could] impose [a heightened] punishment . . . based upon the judge's [independent factual] finding . . . ." (Citation omitted.) *Apprendi* v. *New Jersey*, supra, 530 U.S. 491. Second, at the time the petitioner's conviction became final, the United States Supreme Court in *Patterson* had avowed "the long-accepted rule . . . that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant." *Patterson* v. *New York*, supra, 432 U.S. 211. Our legislature did so in enacting § 53a-16b, which allows an accomplice to offer proof of his or her mental state as an affirmative defense with respect to the aggravating circumstance of using, carrying or threatening the use of a firearm. Given the United States Supreme Court's holding in *Patterson* that the state need not "disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused"; id., 210; and for the aforementioned reasons, we cannot conclude that the rule the petitioner seeks is merely an application of established constitutional principles.

In light of our thorough review of the relevant federal and state precedent, we conclude that, in the present case, no grounds for relief for the petitioner's due pro-

cess claim were clearly established at the time his conviction became final in 2011. See *Dyous* v. *Commissioner of Mental Health & Addiction Services*, supra, 324 Conn. 177. Accordingly, we conclude that for the habeas court to afford the petitioner relief on his due process claim, it would have had to establish a new constitutional rule that, to comport with due process, the state must prove, as an essential element of accessorial liability for manslaughter in the first degree with a firearm, that the accessory intended the principal's use of a firearm.

Having concluded that the habeas court would have had to depart from prior constitutional jurisprudence to afford relief to the petitioner, we now address his claim that the new constitutional rule he seeks falls within the first *Teague* exception.[19] The petitioner claims that "the rule places a category of private conduct beyond the power of the state to punish" and, therefore, satisfies the first *Teague* exception. We disagree.

The first *Teague* exception "permits the retroactive application of a new rule if the rule places a class of private conduct beyond the power of the [s]tate to proscribe . . . or addresses a substantive categorical guarante[e] accorded by the [c]onstitution, such as a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense." (Citation omitted; internal quotation marks omitted.) *Saffle* v. *Parks*, 494 U.S. 484, 494, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990); *Dyous* v. *Commissioner of Mental Health & Addiction Services*, supra, 324 Conn. 181 n.11.

In *Teague* v. *Lane*, supra, 489 U.S. 288, the United States Supreme Court determined that "[t]he first exception . . . is not relevant . . . [where the new constitutional rule] would not accord constitutional protection to any primary activity . . . ." (Citation omitted.) Id., 311. Rather, "rules that regulate only the manner of determining the defendant's culpability are procedural." (Emphasis omitted.) *Schriro* v. *Summerlin*, 542 U.S. 348, 353, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004); *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 68. "[A] rule that alters the manner of determining culpability merely raise[s] the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. . . . Applying this understanding to new rules governing sentences and punishments, a new procedural rule creates the possibility that the defendant would have received a less severe punishment but does not necessitate such a result. Accordingly, a rule is procedural when it affects how and under what framework a punishment may be imposed but leaves intact the state's fundamental legal authority to seek the imposition of the punishment on a defendant currently subject to the punishment." (Internal quotation marks omitted.)

*Casiano* v. *Commissioner of Correction*, supra, 68.

The new constitutional rule that the petitioner seeks in the present case would require the state, in accordance with due process, to prove as an essential element of accessorial liability for manslaughter in the first degree with a firearm that the accessory intended the principal's use of a firearm. The petitioner argues that "the proposed rule broadens protections against punishment by the state" by requiring the state to "prove to a jury that an accessory intended a principal's use of a firearm" before the accessory can "be exposed to the severely increased penalties to which [the] principal (who obviously intended the use of a firearm) is exposed." (Footnote omitted.) In effect, this rule would alter the manner of determining an accessory's culpability for manslaughter in the first degree with a firearm by invalidating the provisions set forth in §§ 53a-55a and 53a-16b, which make a defendant's lack of knowledge of the firearm an affirmative defense rather than make his knowledge of the firearm an element of the offense. Because the petitioner's proposed rule focuses on the manner by which an accessory can be deemed culpable for the use, carrying or threatened use of a firearm by others in the commission of manslaughter in the first degree, we conclude that the new constitutional rule the petitioner seeks is procedural in nature. See *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 68.

Accordingly, we conclude that the new constitutional rule of criminal procedure that the petitioner seeks does not satisfy the first *Teague* exception. Thus, we conclude that the habeas court properly denied the petitioner relief with respect to his due process claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-8 provides in relevant part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

[2] General Statutes § 53a-55a provides in relevant part: "(a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information. . . ."

[3] The petitioner appealed from the judgment of the trial court to this court, and the appeal was transferred to our Supreme Court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. *State* v. *Gonzalez*, 300 Conn. 490, 492 n.3, 15 A.3d 1049 (2011).

[4] "The victim was the best friend of Michael Borelli, who was convicted of manslaughter charges after he fatally stabbed Jose Gonzalez, the [petitioner's] brother, during a melee at a Waterbury gas station. At one of the court hearings in that case, the victim chanted, 'free Mike Borelli, fuck Peach,' in reference to the [petitioner], whose nickname is 'Peachy.' Thereafter, the [petitioner] often stated that he blamed the victim for his brother's death

and wanted revenge. The victim further antagonized the [petitioner] one night in April, 2006, at [a bar named] Bobby Allen's [in Waterbury], when the victim snubbed the [petitioner's] offer to shake his hand. The [petitioner] then told the victim that he and his friends were 'going down.' " *State* v. *Gonzalez*, 300 Conn. 490, 492 n.4, 15 A.3d 1049 (2011).

[5] "Prior to trial in this case, Furs pleaded guilty to murder and was sentenced to forty-seven years imprisonment. See *Furs* v. *Superior Court*, 298 Conn. 404, 407, 3 A.3d 912 (2010). As is detailed in the record of the trial in the present case, as well as our [Supreme Court's] opinion in *Furs*, although the state subpoenaed Furs to testify at the [petitioner's] trial, he refused to testify on the ground that to do so would violate his privilege against self-incrimination given a pending habeas corpus proceeding in his case, notwithstanding the state's offer of use immunity. Id., 407–409. The trial court held Furs in summary criminal contempt and sentenced him to six months imprisonment consecutive to his murder sentence as a consequence of his failure to testify, concluding that the prosecutor's offer of use immunity was sufficient to protect Furs' fifth amendment rights. Id., 409–10. [Our Supreme Court] subsequently granted Furs' writ of error from that contempt finding, concluding that he was entitled to full transactional immunity under General Statutes § 54-47a. Id., 406, 411–12." *State* v. *Gonzalez*, 300 Conn. 493 n.5, 15 A.3d 1049 (2011).

[6] "Investigators subsequently determined that this gun had fired the bullet that was recovered from the victim's chest and had ejected a shell casing that was found at the scene." *State* v. *Gonzalez*, 300 Conn. 494 n.6, 15 A.3d 1049 (2011).

[7] "After explaining the principles of accessorial liability generally in the context of the murder charge, the trial court instructed the jury in relevant part that, [u]nder the accessorial theory of liability, as I've defined it, in order for the state to prove the offense of accessory to manslaughter in the first degree with a firearm, the following elements each must be proved beyond a reasonable doubt: Number one, that the [petitioner] . . . had the specific intent to cause serious physical injury to [the victim]. Two: That the [petitioner] solicits, requests or intentionally aids the principal, the shooter, who causes the death of such person, [the victim]. And three: In the commission of such offense the principal, the shooter, uses a firearm. After explaining each of the three elements individually, including that the jury had to find that the [petitioner] had the specific intent to cause serious physical injury to [the victim], and that the state must prove beyond a reasonable doubt . . . that the [petitioner] did solicit, request or intentionally aid another person, the principal, to engage in conduct which constitutes [the] crime of manslaughter in the first degree, the trial court noted that the third element is that the state must prove beyond a reasonable doubt that in the commission of this offense the principal, [Furs], uses a firearm, defined as any pistol, revolver or other weapon, whether loaded or unloaded, from which a shot may be discharged. You must find that the firearm was operable at the time of the offense.

"The [petitioner] subsequently took an exception to this portion of the charge, seeking reinstruction on this point. The trial court denied that request, rejecting the [petitioner's] argument that the accessory must have the intention that a firearm be used, not only the principal have the intent to use a firearm and use a firearm, but that the accessory must have the intention. That court agreed with the state's position that the firearm element was an aggravant and that the only mental state that the state was required to prove under §§ 53a-8 and 53a-55a was intent to cause serious physical injury." (Footnote omitted; internal quotation marks omitted.) *State* v. *Gonzalez*, supra, 300 Conn. 496–99.

[8] Our Supreme Court concluded that, "to establish accessorial liability under § 53a-8 for manslaughter in the first degree with a firearm in violation of § 53a-55a, the state must prove that the defendant, acting with the intent to cause serious physical injury to another person, intentionally aided a principal offender in causing the death of such person or of a third person, and that the principal, in committing the act, used, carried or threatened to use a firearm." *State* v. *Gonzalez*, supra, 300 Conn. 496.

[9] Specifically, the petitioner alleged that the performance of his trial counsel, Attorney Lawrence S. Hopkins, was deficient because "he failed properly to preserve the [due process] claim . . . ."

[10] Specifically, the petitioner alleged that the performance of his appellate counsel, Attorney Raymond L. Durelli, was deficient because "he failed to raise the [due process] issue . . . ."

[11] Specifically, the petitioner alleged that the performance of his prior

state habeas counsel, Attorney Joseph A. Jaumann, was deficient because he failed to raise (1) the due process claim, (2) "the issue of ineffective assistance of trial counsel," and (3) "the issue of ineffective assistance of appellate counsel . . . ."

[12] The petitioner does not challenge on appeal the habeas court's determination with respect to his claims of ineffective assistance of trial, appellate, and habeas counsel.

[13] The petitioner argues that this court "should not undertake the [respondent's] proposed *Teague* analysis now because the [respondent] did not assert it in the habeas court, the habeas court did not employ it, and the petitioner can only respond . . . in [his] limited reply brief." We reject the petitioner's contention that we should not consider this issue because the respondent failed to raise it as a defense before the habeas court. See *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 58 n.5, 115 A.3d 1031 (2015) (exercising discretion to consider issue of retroactivity under *Teague* notwithstanding respondent's failure to raise it as defense before habeas court), cert. denied sub nom. *Semple* v. *Casiano*, 577 U.S. 1202, 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016).

"[A] reviewing court has discretion to consider an unpreserved claim if exceptional circumstances exist that would justify review of such an issue if raised by a party . . . the parties are given an opportunity to be heard on the issue, and . . . there is no unfair prejudice to the party against whom the issue is to be decided." (Internal quotation marks omitted.) Id. Exceptional circumstances exist that militate in favor of reviewing unpreserved claims, even over the objection of a party, "when review of the claim would obviate the need to address a constitutional question . . . ." (Citations omitted; footnote omitted.) *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 159, 84 A.3d 840 (2014); see also *Neese* v. *Southern Railway Co.*, 350 U.S. 77, 78, 76 S. Ct. 131, 100 L. Ed. 60 (1955) ("we follow the traditional practice of this [c]ourt of refusing to decide constitutional questions when the record discloses other grounds of decision, whether or not they have been properly raised . . . by the parties"). We are also mindful that "[t]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case." (Internal quotation marks omitted.) *State* v. *Washington*, 39 Conn. App. 175, 176–77 n.3, 664 A.2d 1153 (1995). Furthermore, the petitioner had the opportunity to address the issue of retroactivity under *Teague* in his reply brief and at oral argument before this court, and did so. See *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 58 n.5.

[14] We note that, in the petitioner's case, in which the state charged him with manslaughter in the first degree with a firearm as an accessory in violation of §§ 53a-8 and 53a-55a but not with the lesser included offense of manslaughter in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-55 (a) (1), his proof of the affirmative defense set forth in § 53a-16b would serve to relieve him of any criminal culpability associated with the charge of manslaughter in the first degree with a firearm as an accessory.

[15] In his principal appellate brief, the petitioner acknowledges *State* v. *Miller*, supra, 95 Conn. App. 362, as binding precedent and argues that *Miller* "should be overruled."

[16] "The Maine murder statute, Me. Rev. Stat. Ann., [t]it. 17, § 2651 (1964), provides: 'Whoever unlawfully kills a human being with malice aforethought, either express or implied, is guilty of murder and shall be punished by imprisonment for life.'

"The manslaughter statute, Me. Rev. Stat. Ann., [t]it. 17, § 2551 (1964), in relevant part provides: 'Whoever unlawfully kills a human being in the heat of passion, on sudden provocation, without express or implied malice aforethought . . . shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 20 years . . . .' " *Mullaney* v. *Wilbur*, supra, 421 U.S. 686 n.3.

[17] The United States Supreme Court articulated the New Jersey statutory scheme as follows: "A New Jersey statute classifies the possession of a firearm for an unlawful purpose as a 'second-degree' offense. N.J. Stat. Ann. § 2C:39-4 (a) (West 1995). Such an offense is punishable by imprisonment for 'between five years and 10 years.' § 2C:43-6 (a) (2). A separate statute, described by [New Jersey's] Supreme Court as a 'hate crime' law, provides for an 'extended term' of imprisonment if the trial judge finds, by a preponderance of the evidence, that '[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'

N.J. Stat. Ann. § 2C:44-3 (e) (West Supp. 1999–2000). The extended term authorized by the hate crime law for second-degree offenses is imprisonment for 'between 10 and 20 years.' § 2C:43-7 (a) (3)." *Apprendi* v. *New Jersey*, supra, 530 U.S. 468–69.

[18] Section 125.25 of New York's Penal Law (McKinney 1975) provides in relevant part: "A person is guilty of murder in the second degree when:

"1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:

"(a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime." *Patterson* v. *New York*, supra, 432 U.S. 198–99 n.2.

[19] The petitioner does not claim that this rule would fall within the second exception in *Teague*, which is for watershed constitutional rules of criminal procedure. See *Dyous* v. *Commissioner of Mental Health & Addiction Services*, supra, 324 Conn. 181. As such, our analysis is limited to the first *Teague* exception.