******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# RICARDO PAGAN *v.* HAL SMITH ET AL.
## (AC 47290)

Clark, Seeley and Bishop, Js.

### *Syllabus*

The petitioner, who previously had been found not guilty by reason of mental disease or defect of various charges in connection with the sexual assault of a minor and committed to the jurisdiction of the Psychiatric Security Review Board, appealed, on the granting of certification, from the habeas court's judgment denying in part his second habeas petition. He claimed, inter alia, that the court erred in concluding that his counsel from a prior habeas action, M, did not provide ineffective assistance because she failed to raise certain claims concerning the alleged failure of his trial counsel, H, to advise him of the consequences of pursuing a defense of not guilty by reason of mental disease or defect. *Held*:

This court, as a reviewing court, could not conclude that the petitioner had met his burden to establish that M had rendered ineffective assistance, as the subordinate facts underlying the petitioner's claim were in dispute and had not been resolved by the habeas court.

The habeas court incorrectly determined that the successive petition doctrine barred the petitioner's claim of ineffective assistance of prior habeas counsel, as the petitioner's claim that M had provided ineffective assistance by failing to raise the claims identified in count one of the habeas petition, which related to the alleged ineffective assistance provided by H in connection with the underlying criminal proceedings, was premised on a different legal ground than the claims the petitioner raised in the prior habeas action.

This court could not affirm the habeas court's judgment on the basis that its failure to address the petitioner's claim was harmless, as this court could not assume, from the habeas court's general conclusions, that it had concluded that the petitioner failed to meet his burden of demonstrating that M's assistance was ineffective, and the habeas court's factual findings did not implicitly resolve the petitioner's claim.

Because the judge who heard the habeas action was no longer a judge of the Superior Court, a remand for an articulation was not possible and, consequently, this court remanded the case for a new trial only with respect to the petitioner's claim that M provided ineffective assistance by failing to pursue the claim that H was ineffective for the reasons set forth in count one of the petition.

Argued June 3—officially released November 4, 2025

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Middlesex and tried to the court, *Oliver, J.*; judgment dismissing in part and denying in part the petition, from which the petitioner, on the granting of certification, appealed to this court. *Reversed in part*; *new trial*.

*Michael W. Brown*, assigned counsel, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Michael Gailor*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent Commissioner of Mental Health and Addiction Services).

*Opinion*

CLARK, J. In the criminal matter underlying this habeas corpus action, the petitioner, Ricardo Pagan, was found not guilty by reason of mental disease or defect after an uncontested trial at which the state agreed not to oppose the petitioner's claim that he lacked substantial capacity to control his conduct within the requirements of the law. See General Statutes § 53a-13 (a).[1] In his amended petition for a writ of habeas corpus (amended petition), the petitioner alleged that his counsel from a prior habeas action (first habeas action), Justine Miller, rendered ineffective assistance by, inter alia, failing to raise certain claims

---

[1] General Statutes § 53a-13 (a) provides: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time the defendant committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

We note that, although § 53a-13 has been amended since the time of the petitioner's criminal trial; see, e.g., Public Acts 2019, No. 19-27, § 1; those amendments are not pertinent to the present case. In the interest of simplicity, we refer to the current revision of the statute.

concerning the alleged failure of his criminal trial counsel, Mary Haselkamp, to advise him of the consequences of pursuing a defense of not guilty by reason of mental disease or defect. Following the granting of his petition for certification to appeal, the petitioner appeals from the judgment of the second habeas court denying in part his amended petition. On appeal, the petitioner claims that the court erred by (1) concluding that Miller did not render ineffective assistance, and (2) declining to address certain aspects of his claim that Miller provided ineffective assistance.[2] We reverse in part the judgment of the habeas court.

The following facts and procedural history are relevant to this appeal. On January 31, 2000, a witness observed the petitioner engaging in sexual activity with a two year old child in the petitioner's home in New Haven. On February 1, 2000, the petitioner surrendered to the police and provided a statement in which he admitted touching the victim's vagina during the incident in question and engaging in similar conduct with the same victim on two previous occasions. The petitioner was charged in a ten count information with sexual assault and related offenses.

---

[2] The petitioner also claims that the habeas court erred by failing to consider certain expert testimony that he presented before it. As we explain in footnote 15 of this opinion, because we conclude that the petitioner is entitled to a new trial on the claim for which he contends the expert testimony was relevant, we need not address his contention that the court erred in failing to consider that testimony.

Additionally, in the statement of issues in his principal appellate brief, the petitioner identifies as an additional issue, "[w]hether the petitioner's trial counsel was ineffective?" In his reply brief, however, the petitioner concedes that he is not raising Haselkamp's ineffectiveness as a separate claim of error but, rather, addresses her alleged ineffectiveness only in support of his claim that the habeas court erred in concluding that Miller did not provide ineffective assistance. In accordance with the petitioner's concession, although we discuss the petitioner's allegation that Haselkamp was ineffective in connection with our analysis of the petitioner's claim that Miller provided ineffective assistance, we need not address Haselkamp's alleged ineffectiveness as a separate claim.

In the underlying criminal proceedings, the petitioner was represented by Haselkamp, who was then an assistant public defender in New Haven. Early during her representation of the petitioner, Haselkamp asked Katie Farrell, a social worker with the New Haven public defender's office, to evaluate the petitioner and gather records about the petitioner's background. Haselkamp also retained Julia Ramos Grenier, a psychologist, to conduct a psychological evaluation of the petitioner, and Maria Tupper, a licensed clinical social worker, to conduct a sex offender psychosocial evaluation. Grenier concluded that the petitioner suffered from various mental health and behavioral disorders, including pedophilia, post-traumatic stress disorder, and borderline personality disorder, and that he "was unable to control his behavior at the time of the [underlying] offense, and thus could not conform his behavior to the law, due to a mental disorder." Tupper recommended that the petitioner be placed at Whiting Forensic Hospital (Whiting) for long-term sex offender treatment, mental health treatment, and substance abuse treatment. On the basis of those evaluations, Haselkamp considered pursuing a defense of not guilty by reason of mental disease or defect. At some point, the state made a plea offer to the petitioner that would have required the petitioner to serve twenty-five years of incarceration, execution suspended after twenty years, followed by lifetime probation. The petitioner rejected that offer. Following discussions between Haselkamp and the prosecutor, the state agreed not to oppose the petitioner's affirmative defense of not guilty by reason of mental disease or defect, and the petitioner agreed not to oppose the evidence presented by the state in its case-in-chief.

On February 6, 2001, the petitioner waived his right to a trial by jury, and, following an uncontested trial, the court, *Fasano, J.*, found that the state had proven all elements of the charges beyond a reasonable doubt. The court further found that the petitioner had proven

by a preponderance of the evidence that, "as a result of mental disease or defect on the dates and times in question, [the petitioner] lack[ed] a substantial capacity to control his conduct within the requirements of the law . . . ." See General Statutes § 53a-13 (a). On May 18, 2001, following the submission of a report prepared by the respondent Commissioner of Mental Health and Addiction Services,[3] the court ordered the petitioner committed to the custody of the Psychiatric Security Review Board (board) for a period not to exceed forty years. See General Statutes § 17a-582.[4] The petitioner

---

[3] The petitioner commenced this action against both Hal Smith, in his capacity as the chief executive officer of Connecticut Valley Hospital, and the Commissioner of Mental Health and Addiction Services. In this opinion we refer to the Commissioner of Mental Health and Addiction Services as the respondent and to Smith by name.

[4] General Statutes § 17a-582 provides in relevant part: "(a) When any person charged with an offense is found not guilty by reason of mental disease or defect pursuant to section 53a-13, the court shall order such acquittee committed to the custody of the Commissioner of Mental Health and Addiction Services who shall cause such acquittee to be confined, pending an order of the court pursuant to subsection (e) of this section, in any of the state hospitals for psychiatric disabilities or to the custody of the Commissioner of Developmental Services, for an examination to determine his mental condition.

"(b) Not later than sixty days after the order of commitment pursuant to subsection (a) of this section, the superintendent of such hospital or the Commissioner of Developmental Services shall cause the acquittee to be examined and file a report of the examination with the court, and shall send a copy thereof to the state's attorney and counsel for the acquittee, setting forth the superintendent's or said commissioner's findings and conclusions as to whether the acquittee is a person who should be discharged. . . .

"(c) Not later than ten days after receipt of such superintendent's or said commissioner's report, either the state's attorney or counsel for the acquittee may file notice of intent to perform a separate examination of the acquittee. An examination conducted on behalf of the acquittee may be performed by a psychiatrist or psychologist chosen by the acquittee and shall be performed at the acquittee's expense unless the acquittee is indigent. If the acquittee is indigent, the court shall provide the acquittee with the services of a psychiatrist or psychologist to perform the examination at the expense of the state. The superintendent or said commissioner who conducted the initial examination shall, not later than five days after a request of any party conducting a separate examination pursuant to this subsection, release to such party all records and reports compiled in the initial examination of the acquittee. Any separate examination report shall be filed with the court not later than thirty days after the filing with the court of the initial examination report by the superintendent or said commissioner.

was placed at Whiting, a maximum security facility, where he remained for nineteen years, after which he was transferred to Dutcher Hall (Dutcher), a less restrictive facility.

The petitioner filed his first habeas petition on April 15, 2009. In the operative petition in that proceeding (first habeas petition), the petitioner, then represented by Miller, alleged that Haselkamp had provided ineffective assistance by, inter alia, failing to "explain all of the consequences of entering . . . a plea [of not guilty by reason of mental disease or defect]," failing to "inform the petitioner that he would be subject to periodic review by the [board],"[5] and "fail[ing] to spend an adequate amount of time meeting with the petitioner to ensure that the petitioner fully understood all aspects of the state's case and the petitioner's defense . . .

"(d) The court shall commence a hearing not later than fifteen days after its receipt of any separate examination report or if no notice of intent to perform a separate examination has been filed under subsection (c) of this section, not later than twenty-five days after the filing of such initial examination report.

"(e) At the hearing, the court shall make a finding as to the mental condition of the acquittee and, considering that its primary concerns are the protection of society and the safety and well-being of the acquittee, make one of the following orders:

"(1) If the court finds that the acquittee is a person who should be confined or conditionally released, the court shall order the acquittee committed to the jurisdiction of the board and either confined in a hospital for psychiatric disabilities or placed with the Commissioner of Developmental Services, for custody, care and treatment pending a hearing before the board pursuant to section 17a-583; provided (A) the court shall fix a maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense, and (B) if there is reason to believe that the acquittee is a person who should be conditionally released, the court shall include in the order a recommendation to the board that the acquittee be considered for conditional release pursuant to subdivision (2) of section 17a-584 . . . ."

Although § 17a-582 has been amended since the petitioner was committed to the custody of the board; see, e.g., Public Acts 2006, No. 06-91, § 2; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[5] General Statutes § 17a-585 provides in relevant part: "The board shall conduct a hearing and review the status of the acquittee not less than once every two years. . . ."

[and] to ensure that the petitioner understood his options regarding entering into a plea agreement or proceeding to trial on either a straight plea of not guilty or a plea of not guilty by reason of mental disease or defect."[6] A trial on the first habeas petition was held on December 4, 2013, before the court, *Gold, J.*, at which the petitioner and Haselkamp testified.

On June 6, 2014, the court issued a memorandum of decision denying the first habeas petition. See *Pagan* v. *Kirk*, Superior Court, judicial district of Middlesex, Docket No. CV-09-4010322 (June 6, 2014), aff'd sub nom. *Pagan* v. *Commissioner of Mental Health & Addiction Services*, 160 Conn. App. 901, 122 A.3d 776 (2015), cert. denied, 319 Conn. 959, 125 A.3d 1013 (2015). The court rejected the petitioner's claim that Haselkamp did not adequately advise the petitioner of his options and of the consequences of pursuing a defense of not guilty by reason of mental disease or defect. Id. The court found that the petitioner knew that he had the right to go to trial or to accept the state's plea offer, that "Haselkamp repeatedly explained a great deal about the [not guilty by reason of mental disease or defect] plea process and its consequences, including the possibility of a commitment term of zero to forty years" and that he "would have to appear periodically before the [board] . . . ." (Internal quotation marks omitted.) Id. After the court denied the petitioner's petition for certification to appeal, the petitioner appealed that denial to this court, which affirmed the judgment in a per curiam opinion. *Pagan* v. *Commissioner of Mental Health & Addiction Services*, 160 Conn. App. 901, 122 A.3d 776, cert. denied, 319 Conn. 959, 125 A.3d 1013 (2015).

---

[6] The petitioner also alleged that his right to due process was violated because his plea of not guilty by reason of mental disease or defect was not knowing, intelligent, and voluntary.

The petitioner commenced the present action by filing, in a self-represented capacity, a petition for a writ of habeas corpus on May 21, 2019.[7] On July 20, 2021, after counsel was appointed for the petitioner, the petitioner's counsel filed the operative amended petition, which contains two counts. In count one, the petitioner alleged that Haselkamp provided ineffective assistance in connection with her pretrial investigation and advice to the petitioner regarding whether to pursue a defense of not guilty by reason of mental disease or defect. Although count one of the amended petition contains twenty-one separate paragraphs alleging various ways in which Haselkamp was ineffective, the crux of the petitioner's claim was that Haselkamp (1) failed to advise him that, due to his diagnosis of pedophilia and his underlying crimes involving child sexual abuse, it was unlikely that he would be released from the custody of the board in a shorter time than he would serve in prison if he pleaded guilty or was convicted after trial, (2) failed to investigate and advise the petitioner about the likelihood that he would be able to comply with the treatment necessary for him to be released to the community, and (3) failed to investigate and advise the petitioner about possible defenses if he went to trial or potential mitigation evidence that could be presented at sentencing if he chose not to pursue a mental disease or defect defense. In count two, the petitioner alleged that Miller was ineffective for (1) failing to pursue the allegations of ineffective assistance identified in count one, (2) failing to consult with mental health and legal experts regarding "the significance of the petitioner's mental health profile to the adequacy of [Haselkamp's] performance," and (3) failing to adequately pursue the claims that she raised in the first habeas action.

---

[7] Before filing the present action, on March 10, 2016, the petitioner filed a petition for a writ of habeas corpus in the United States District Court for the District of Connecticut. On March 21, 2019, the court, Chatigny, J., dismissed that petition as untimely.

On November 2, 2021, the respondent and Smith filed a return that raised the successive petition doctrine as an affirmative defense to count one, asserting that the petitioner's claim that Haselkamp was ineffective should be dismissed pursuant to Practice Book § 23-29 (3)[8] because it was premised on the same legal ground as his first habeas action and did not allege new facts or identify new evidence that was not reasonably available at the time of that action.[9] The respondent and Smith did not raise any affirmative defense with respect to count two.

On March 9, June 2 and October 11, 2022, the habeas court, *Oliver, J.*, held a trial on the amended petition. The petitioner testified on his own behalf and presented the testimony of multiple witnesses, including the following: Haselkamp; Farrell; Miller; Rafael Gallegos, a clinical and forensic psychologist; Monte Radler, a public defender who was in charge of the psychiatric defense unit of the public defender's office at the time of the underlying criminal trial; and Michael Perlin, a former law professor at New York Law School who specializes in issues related to criminal defendants with mental disabilities. The petitioner also introduced numerous exhibits. The respondent presented no witnesses and introduced no exhibits. Following the trial,

[8] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition . . . ."

[9] In his reply to the return, the petitioner claimed that his claims set forth in count one of the amended petition were not barred by the successive petition doctrine, asserting that (1) he did not receive a full and fair hearing in his first habeas action due to the ineffective assistance of Miller, (2) the specific allegations of ineffective assistance in count one were not raised in the first habeas action, and (3) he sought different relief in this action in that he requested to be resentenced in accordance with the terms of the state's pretrial plea offer. Because the petitioner does not challenge on appeal the habeas court's determination that count one was barred by the successive petition doctrine, we need not address the allegations in the petitioner's reply to the return.

both parties filed posttrial briefs setting forth their positions on the petitioner's claims.

On August 24, 2023, the habeas court issued a memorandum of decision in which it dismissed count one and denied count two of the amended petition. In dismissing count one, the court explained that "the petitioner asserts ineffective assistance of underlying trial counsel, Haselkamp, as stated in the amended petition. These claims are not supported by any allegations or facts not reasonably available to the petitioner at the time of the first habeas matter. Additionally, upon a review of the entire record, including the first habeas court's ruling and the testimony and exhibits adduced at the instant trial . . . there is no basis upon which this court can reasonably find that the petitioner did not receive a full and fair hearing in his first habeas trial. [Count] one in the [amended] petition is the same legal ground as [count] one in the first habeas . . . petition seeking, ultimately, the same relief." The court therefore dismissed count one under Practice Book § 23-29 (3). See footnote 8 of this opinion.

Turning to count two of the amended petition, the habeas court first concluded that it did not need to address the aspect of that count alleging that Miller was ineffective for failing to pursue the allegations of ineffective assistance identified in count one, determining that "[i]t shall suffice that the court dismissed [count] one as successive and will not, therefore, address those same claims as incorporated in [count] two." The court then concluded that, "[a]s to the remaining assertions in [count] two . . . the petitioner has failed to carry his burden of proof." The court therefore denied count two of the amended petition. The petitioner subsequently filed a petition for certification to appeal, which the court granted on September 15, 2023. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first address the petitioner's claim that the habeas court erred by failing to conclude that Miller provided ineffective assistance.[10] We disagree.

The following legal principles and standard of review are relevant to the petitioner's claim. "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may [deny] a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Dearing* v. *Commissioner of Correction*, 230 Conn. App. 145, 154–55, 329 A.3d 988, cert. denied, 351 Conn. 910, 331 A.3d 158 (2025).

The petitioner's claim implicates Haselkamp's advice regarding the decision to plead not guilty by reason of mental disease or defect. "For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the second

---

[10] Although we conclude in part II of this opinion that the petitioner is entitled to a new trial on the aspect of his claim in count two of the amended petition, alleging that Miller was ineffective for failing to raise the claims identified in count one, we first address the petitioner's claim that the habeas court erred by failing to conclude that Miller rendered ineffective assistance because, if the petitioner were to prevail on that claim, it would obviate any need for a new habeas trial, thereby rendering his second claim moot.

prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Dyous* v. *Commissioner of Mental Health & Addiction Services*, 324 Conn. 163, 186, 151 A.3d 1247 (2016).

"Our Supreme Court, in *Lozada* v. *Warden*, [223 Conn. 834, 843, 613 A.2d 818 (1992)], established that habeas corpus is an appropriate remedy for the ineffective assistance of appointed habeas counsel, authorizing . . . a second petition for a writ of habeas corpus . . . challenging the performance of counsel in litigating an initial petition for a writ of habeas corpus . . . [that] had claimed ineffective assistance of counsel at the petitioner's underlying criminal trial or on direct appeal. . . . Nevertheless, the court in *Lozada* also emphasized that a petitioner asserting a habeas on a habeas faces the herculean task . . . of proving in accordance with [*Strickland*] both (1) that his appointed habeas counsel was ineffective, and (2) that his trial [or appellate] counsel was ineffective. . . .

"Simply put, a petitioner cannot succeed . . . on a claim that his habeas counsel was ineffective by failing to raise a claim against trial counsel or prior habeas counsel in a prior habeas action unless the petitioner ultimately will be able to demonstrate that the claim against trial or prior habeas counsel would have had a reasonable probability of success if raised. . . .

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed [on appeal] unless they are clearly erroneous. . . . Thus, the [habeas] court's factual findings are entitled to great weight. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Dearing* v. *Commissioner of Correction*, supra, 230 Conn. App. 156.

Although the petitioner argues, in the claim we address in part II of this opinion, that the habeas court erred by failing to address his claim that Miller was ineffective for failing to raise the claims identified in count one of the amended petition, he also contends that, notwithstanding that the court did not address the issue in the first instance, this court should conclude on appeal that he met his burden to establish that Miller provided ineffective assistance. In making that argument, however, the petitioner does not identify any factual findings by the habeas court that would support the conclusion that the performance of either Miller or Haselkamp was deficient or identify any basis on which this court could conclude that the petitioner carried his burden of proof in the absence of such findings. Instead, the petitioner argues that "[t]he sixth amendment claim presented by the petitioner in the habeas proceeding below was supported by the evidence" and then simply recounts the evidence he presented in support of his claim.

As a general matter, "[i]t is not our role as an appellate court to make factual findings to determine whether the plaintiff has carried this burden." *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 609, 717 A.2d 713 (1998). Our role on appeal is not to retry the case, but to review the findings and conclusions of the habeas court for specific claims of legal error. See, e.g., *Corbett* v. *Commissioner of Correction*, 133 Conn. App. 310, 317, 34 A.3d 1046 (2012) ("[t]his

court does not retry the case or evaluate the credibility of witnesses" (internal quotation marks omitted)); *Gosselin* v. *Gosselin*, 110 Conn. App. 142, 145, 955 A.2d 60 (2008) ("This court, of course, may not retry a case. . . . The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." (Internal quotation marks omitted.)). Although there are limited circumstances in which "the undisputed facts or uncontroverted evidence and testimony in the record make a factual conclusion inevitable so that a remand to the trial court for a determination would be unnecessary"; (internal quotation marks omitted) *Karantonis* v. *East Hartford*, 71 Conn. App. 859, 863, 804 A.2d 861, cert. denied, 261 Conn. 944, 808 A.2d 1137 (2002); in the present case, the subordinate facts that would be necessary for the petitioner to prevail on his claim are disputed. As explained in part II of this opinion, the habeas court made no factual findings regarding, inter alia, (1) whether, as the petitioner claims, a person with his diagnosis and underlying crimes is likely to face a lengthier period of confinement if found not guilty by reason of mental disease or defect than if convicted after trial, (2) whether Haselkamp should have been aware, based on the petitioner's background, that he would have a difficult time successfully engaging in treatment, and (3) whether reasonably competent counsel at the time had a duty to advise a client concerning the prospects for successfully engaging in treatment. The court also made no findings regarding whether Miller was or should have been aware of the

underlying facts necessary to support the claim that Haselkamp was ineffective for the reasons that the petitioner claims, or whether, even if she had been aware of those facts, it would have been a reasonable strategic decision not to pursue those claims. Because the subordinate facts underlying the petitioner's claims are in dispute and were not resolved by the habeas court, we reject the petitioner's claim that we may conclude on appeal that Miller rendered ineffective assistance.

## II

We next address the petitioner's claim that the habeas court erred by failing to address the aspect of his claim in count two of the amended petition alleging that Miller provided ineffective assistance by failing to raise the claim that Haselkamp was ineffective for the reasons identified in count one. He argues that, pursuant to our Supreme Court's decision in *Lozada* v. *Warden*, supra, 223 Conn. 834, his claim that Miller was ineffective for failing to pursue the claims identified in count one constitutes a different legal ground that could not have been raised in his first habeas action, that the court erred by declining to address that claim, and that he is entitled to a new trial on that claim. The respondent concedes that the dismissal of count one did not justify the court's decision not to address the aspect of count two alleging that Miller was ineffective for failing to pursue the claims identified in count one but argues that the court's failure expressly to address that claim was harmless because its findings and conclusions necessarily resolved the substance of the claim. We agree with the petitioner.

The following additional facts and procedural history are relevant to the petitioner's claim. In support of his claim that Haselkamp was ineffective and that Miller

was ineffective for failing to pursue the allegations identified in count one of the amended petition, the petitioner presented the following evidence. Radler testified that he had established the psychiatric defense unit of the public defender's office in 1998 and served as its supervisor at the time of the criminal proceedings in the petitioner's case. He testified that Haselkamp had consulted with him when she represented the petitioner. He further testified that he "discussed with her the inherent difficulties that an acquittee would have being under . . . board jurisdiction . . . if the underlying crime [involved] pedophilia. Because, at that point in time, we were very well aware that it is very difficult to get out of a criminal commitment system with . . . [a] diagnosis [of pedophilia]." He testified that, although he did not recall the details of his discussion, he did explain to Haselkamp that "the length of a commitment could be very, very long if . . . [a defense of not guilty by reason of mental disease or defect] based on [pedophilia] was successful." On cross-examination, Radler acknowledged that he had been representing the petitioner before the board since 2014 and that he drafted the habeas petition that the petitioner had filed in a self-represented capacity to initiate the present action.

Gallegos testified that the reports prepared by Grenier and Tupper at the time of the criminal proceedings indicated that the petitioner had a history of emotional and behavioral problems and was intellectually disabled, which means that he was "functioning in the lowest second percentile of . . . the population." He also testified, on the basis of his own evaluation of the petitioner and his review of the reports prepared at the time of the criminal proceedings, that the petitioner would have had "significant difficulties appreciating . . . the implications associated with entering [a not guilty by reason of mental disease or defect] plea," but that it would have been possible for the petitioner to

understand the information if it was properly presented to him. Gallegos further testified that the reports of Tupper and Grenier had indicated that it was likely to be "a very long time" for the petitioner to transfer from Whiting to a less secure setting and that "his prognosis was . . . quite poor."[11] Finally, he testified that, with the kind of risk assessment used by the board, commission of a sex offense is considered a "static factor," meaning that it is "immutable and . . . can't really change." He testified that, even if a person is determined to be at a low risk of reoffending, an underlying sex offense "might make it very difficult for [a person] to move beyond the confines of the [board]."

Perlin testified that a person found not guilty by reason of mental disease or defect spends, on average, twice as long in a maximum security facility than a person who is convicted of the same offenses and that reasonably competent counsel at the time of the petitioner's underlying trial would have advised the client of that fact. He further testified that reasonably competent counsel would have investigated and advised the client about the type of treatment the client would receive if found not guilty by reason of mental disease or defect and the likely length of confinement given the charges and diagnoses. He also testified that a person considering whether to pursue a defense of not guilty by reason of mental disease or defect should be advised of what that person would have to do to be transferred from a maximum security facility to a less restrictive setting and that reasonably competent counsel would not advise a client that his length of commitment would

---

[11] Tupper's report, which she prepared at the request of Haselkamp, stated that "it is very unlikely that [the petitioner] will be safe for many years to come in even the most highly monitored of the community-based . . . sex offender treatment programs" and that "[i]t is likely that if [the petitioner] is able to benefit from any of the treatments recommended it will be a very long and slow process. In any circumstance, [the petitioner's] . . . prognosis is highly guarded."

depend on the client's cooperation with treatment. Perlin testified that "[t]here's no basis" to advise such a client "that whether or not he gets to the least restrictive alternative facility . . . would depend on him" and that "[i]t depends on a lot of other things besides [the client]." On cross-examination, Perlin acknowledged that he was not admitted to practice law in Connecticut, had never represented a client in state or federal court in this state, and had never represented anyone housed at Whiting. He further testified that he did not "know very much about the Whiting facility" or "what Whiting was like in the year 2000 . . . ."

In her testimony, Haselkamp testified that, given the amount of time that had passed, she could not recall all of the details of her discussions with the petitioner. She acknowledged, however, that she had consulted with Radler about the possibility of pursuing a defense of not guilty by reason of mental disease or defect. She testified that Radler had told her that the petitioner's pedophilia diagnosis "would delay how quickly he may get out into the community but [would] not necessarily delay . . . how [quickly] he would get out into a less restrictive setting." A contemporaneous note from her file regarding a telephone call with Radler reads, in part, "Pedophile . . . dif. to come out of [the board]." She testified that she did not advise the petitioner that his diagnoses and underlying criminal charges likely would make it difficult for him to progress to a less restrictive setting or to be released from the custody of the board, but advised the petitioner that "how quickly he moved forward into less restrictive settings would depend on him and how well he did with treatment . . . ." Haselkamp also testified that she did not advise the petitioner regarding whether he would have difficulty with treatment because "[h]e had never been in treatment before . . . I'm not a doctor, I'm not a psychologist, I knew he had not been in treatment

before, so . . . I can't advise him . . . as to [whether] he's going to have problems with it . . . . I assumed he would get the appropriate treatment at Whiting because . . . that's what they supposedly do is provide people with treatment. . . . [T]hat would not have been a discussion I would have had with him in terms of . . . you're going to be here longer because you have all these diagnoses. . . . I would not have done that." She further testified that she "would have made it very basic to him and very concrete that he will progress if he engages in treatment."

With respect to her advice regarding the petitioner's options, Haselkamp testified that the petitioner had expressed a desire for treatment and that she "advised him that, if he wanted treatment, the route to go would be [Whiting] . . . but . . . it was his choice and we left that to him. And I know that he made the choice of wanting to go to the hospital." Regarding her advice about possible defenses and the likely outcome after trial, Haselkamp testified that, although she did not recall her specific discussions with the petitioner, her general practice was to discuss the strengths and weaknesses of the state's case and the possible outcomes and that she was "sure we went over the evidence in the case." When asked whether she had discussed with the petitioner "what would happen at a trial or in a sentencing proceeding," Haselkamp testified that she "[did not] have any recollection of that, no. And . . . because we weren't heading toward trial I don't know how much we would have gone into detail about those things." When asked if "there [was] ever a discussion of what a defense at trial would look like if he decided to go to trial," Haselkamp responded: "[W]hen we were talking trial we were talking the [not guilty by reason of mental disease or defect] route, we weren't talking a trial where we were not raising that defense. . . . [T]here were probably some discussions on what could

happen, but . . . again, the exact discussion I don't have any recollection of." When asked if it was "fair to say there was no discussion of" a defense other than not guilty by reason of mental disease or defect, Haselkamp testified that, although she could not "say we never did [have that discussion] from the beginning of the case," she did not "have any recollection of that."[12]

Miller testified that she did not recall speaking with Radler and did not recall seeing any notes from Haselkamp's file concerning her discussion with Radler about the impact of the petitioner's pedophilia diagnosis on his prognosis for success in the custody of the board. She acknowledged that, if she had known that Haselkamp had information that the petitioner's diagnosis would make it difficult for him to progress out of Whiting and, ultimately, to be released to the community, that would have been relevant to the petitioner's claims. She also testified, however, that she "might not have" raised a claim that Haselkamp was ineffective for failing to advise the petitioner about that issue because "it was hard to get [the petitioner] to understand certain things" and he "may not have been able to actually understand" the advice. Miller also testified that, although she did not recall considering a claim that Haselkamp was ineffective for failing to advise the petitioner that his diagnoses would make it difficult for

---

[12] Farrell testified that she worked closely with Haselkamp on the petitioner's case and generally corroborated Haselkamp's testimony in many respects. She testified that she discussed with the petitioner that pursuing a mental disease or defect defense would provide an opportunity for him to receive treatment that could help him be more successful in the community and reduce the likelihood of recidivism. Like Haselkamp, she testified that they were not in a position to assess how the petitioner would fare in treatment because he had never previously engaged in treatment. She further testified that, in assessing the petitioner's options, "the option of the hospital seemed more hopeful for his future functioning," but that their analysis did not include a discussion of the potential length of the petitioner's confinement. She "[did not] have concerns that [the petitioner would not] be able to comprehend what was being asked of him or to participate in treatment" and did not recall any discussions about whether the petitioner's behavioral issues would be a roadblock for him to return to the community.

him to comply with treatment and follow the rules at Whiting, as a matter of strategy she would not have raised such a claim because "[the petitioner] did not believe that he was mentally [ill]," so she "[did not] think [that claim] would have really gone anywhere . . . ."

The petitioner testified that he repeatedly told Haselkamp that he wanted to go to trial but that she never discussed trial strategy with him and did not advise him about potential defense strategies. He testified that he "was afraid [of] . . . being locked up in a mental hospital . . . [where] you don't get out of there" and of being forcibly medicated. He further testified that he told Haselkamp about these fears, but she told him that "she believed that [he] would do better in [Whiting] than . . . in prison."

The petitioner gave conflicting testimony concerning Haselkamp's advice about how long he could expect to be in the custody of the board. Initially, he testified that Haselkamp told him that, to get out of Whiting, he had to "listen to the . . . people [that are] going to be working with you," and, "[i]n two years . . . you will go to Dutcher, and, before you know it, you will be out in the community." Consistent with Haselkamp's testimony, the petitioner also testified that Haselkamp did not tell him that his diagnosis and underlying crimes would make it difficult for him to progress out of Whiting. He further testified that, if he had been so advised, he would not have pursued the defense of not guilty by reason of mental disease or defect and would have insisted on going to trial. Subsequently, however, he testified that Haselkamp did not tell him that how quickly he progressed through the system would depend on how well he cooperated with his treatment and that "the only thing she told me clearly [was] that I would go to Whiting for two years and, before I know it, I'd be in Dutcher and I'd be out in the community."

As discussed previously in this opinion, the habeas court dismissed count one of the amended petition on the basis that it was successive to the claims raised in the petitioner's first habeas action and, thereafter, stated that its conclusion obviated the need to address the aspect of count two alleging that Miller was ineffective for failing to raise the claims alleged in count one. The court then set forth its conclusion that the petitioner had failed to meet his burden of proof with respect to the remaining claims in count two. After setting forth the legal principles governing the petitioner's ineffective assistance of habeas counsel claim, the court proceeded to make findings and conclusions in support of its ultimate conclusion that the petitioner failed to meet his burden of proof.

First, the habeas court found that the petitioner was not "a reliable or credible historian," and that both Haselkamp and Miller had testified credibly. Second, in eleven numbered paragraphs, the court made general conclusions concerning whether the petitioner had proven certain allegations. Although the court previously had indicated that it would not address the claim in count two of the amended petition, alleging that Miller was ineffective for failing to raise the claims identified in count one, some of the eleven conclusions appear to relate to aspects of that claim. Specifically, the court concluded that "[t]he petitioner has failed to demonstrate that [Miller] was deficient for failing to establish that the petitioner was not properly informed by . . . Haselkamp about the criminal trial evidence, the plea offer, the [mental disease or defect] defense and its consequences, including the structure, transition and progression through the criminal acquittee commitment process. The competent testimony and other evidence in the record demonstrates the opposite. Therefore, based on the lack of competent evidence related thereto . . . Miller was not ineffective . . . ." The

court also concluded: "The petitioner has failed to establish, based on the loose, equivocal and unclear evidence presented on the issue, that [Miller] was ineffective in failing to establish that . . . Haselkamp did not provide the petitioner [with] accurate, sufficient and commitment consequences surrounding his diagnoses," "[t]he competent evidence adduced demonstrated that [Haselkamp] properly informed the petitioner of his options during the criminal litigation," and "[t]he petitioner was unable to establish a lack of ability to understand his legal situation, likely trial evidence, consequences of the [not guilty by reason of mental disease or defect] defense and the commitment process, including his responsibilities in this regard, after thorough and repeated efforts by underlying counsel . . . ."

The following standard of review and legal principles govern our review of the petitioner's claim. The habeas court's conclusion that a petition is successive is a matter of law subject to plenary review. See *Zollo* v. *Commissioner of Correction*, 133 Conn. App. 266, 276, 35 A.3d 337, cert. granted, 304 Conn. 910, 39 A.3d 1120 (2012) (appeal dismissed May 1, 2013). "As our Supreme Court has observed, the successive petition doctrine involves the one situation in which a court is not legally required to hear a habeas petition. . . . The doctrine is codified in Practice Book § 23-29, which provides in relevant part: The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition . . . ." (Citation omitted; internal quotation marks omitted.) *Crawley* v. *Commissioner of Correction*, 194 Conn. App. 574, 579, 221 A.3d 849 (2019), cert. denied, 334 Conn. 916, 222 A.3d 104 (2020). When a petitioner who

previously raised and litigated a claim of ineffective assistance of trial counsel in a prior habeas petition brings a subsequent petition, "[a] claim of ineffective assistance of counsel during trial proceedings constitutes the 'same ground' for purposes of [Practice Book] § 23-29 (3), despite changes in the precise underlying specifications of deficient performance, unless such new specifications are based on facts or evidence not reasonably available when the ground was raised in the earlier petition." *Lebron* v. *Commissioner of Correction*, 178 Conn. App. 299, 318, 175 A.3d 46 (2017), cert. denied, 328 Conn. 913, 179 A.3d 779 (2018).

The successive petition doctrine, however, does not bar a claim of ineffective assistance of prior habeas counsel, even if that claim rests on an allegation that prior habeas counsel was ineffective for failing to challenge the effectiveness of trial counsel. As our Supreme Court explained in *Lozada* v. *Warden*, supra, 223 Conn. 834, when a petitioner raises such a claim, "the second habeas petition is not predicated on the same issues addressed in the first petition. Although the petitioner must, by necessity, repeat his allegations of trial counsel's inadequacy, there may never have been a proper determination of that issue in the first habeas proceeding because of the allegedly incompetent habeas counsel. The claim of ineffective assistance of habeas counsel, when added to the claim of ineffective assistance of trial counsel, results in a different issue." Id., 844; see also *Harris* v. *Commissioner of Correction*, 108 Conn. App. 201, 209, 947 A.2d 435 ("[b]ecause [the petitioner] challenges the effectiveness of his prior habeas counsel, which also challenges the validity of his underlying conviction, the ground he asserts is different from the previous grounds asserted in his prior habeas petitions, the petition is not barred as successive"), cert. denied, 288 Conn. 911, 953 A.2d 652 (2008).

In the present case, the petitioner's claim that Miller was ineffective for failing to pursue the claims identified in count one of the amended petition was not barred as successive because it was premised on a different legal ground than the claims raised in the first habeas action. Specifically, the petitioner's claim that Miller was ineffective for failing to pursue the allegations of ineffectiveness identified in count one is predicated on the ground that *Miller*, as habeas counsel, provided ineffective assistance, whereas the petitioner's first habeas action was predicated on the ground that *Haselkamp*, as criminal trial counsel, was ineffective. Thus, as in *Lozada*, the petitioner was entitled to pursue his claim that his prior habeas counsel was ineffective; see *Lozada* v. *Warden*, supra, 223 Conn. 844–45; and the court was incorrect in its determination that it was not required to address that claim.

The respondent nevertheless argues that we should affirm the habeas court's judgment on the basis that its failure to address the petitioner's claim was harmless. Specifically, the respondent argues that, "notwithstanding the court's initial suggestion that it may have chosen not to address certain claims for an incorrect reason, the petitioner fails to specify any particular issue that he pursued below that the habeas court's findings and conclusions did not ultimately encompass." The respondent further contends that "the court's credibility determinations, factual findings and legal conclusions clearly and specifically addressed, and rejected, the petitioner's claims that [Miller] was ineffective for not successfully challenging [Haselkamp's] allegedly inadequate advice relative to deciding whether to pursue the [mental disease or defect] disposition." For the following reasons, we are not persuaded by the respondent's arguments.

First, contrary to the respondent's contention, the memorandum of decision did not "clearly and specifically" address the petitioner's claim that Miller was

ineffective for failing to pursue the claims in count one of the amended petition. Although the habeas court concluded that the petitioner did not establish that Miller was ineffective for failing to establish either that Haselkamp did not properly advise him about the consequences of pursuing a mental disease or defect defense, "including the structure, transition and progression through the criminal acquittee commitment process," or that Haselkamp did not properly inform the petitioner of his pretrial options, the memorandum of decision does not address the specific allegations of ineffectiveness identified in count one of the amended petition. For example, the court did not specifically address whether Haselkamp was ineffective for advising the petitioner that whether he progressed from Whiting to a less restrictive setting would depend on whether he cooperated with his treatment, for failing to advise the petitioner that his diagnoses and underlying crimes likely would result in him remaining in the custody of the board for longer than he would be incarcerated if he were convicted after a trial, or for failing to advise the petitioner of his likelihood of successfully engaging in treatment. Given the court's express statement that it would not consider the petitioner's claim that Miller was ineffective for failing to raise the claims identified in count one, we cannot assume from the court's general conclusions that it in fact concluded that the petitioner failed to meet his burden with respect to that claim.

Moreover, we disagree with the respondent that the habeas court's factual findings implicitly resolved the petitioner's claim. To the contrary, the memorandum of decision does not contain any factual findings from which we can conclude that the court implicitly rejected the petitioner's claim. Practice Book § 6-1 (a) requires the court, when rendering judgment in a civil matter, to provide an oral or written decision that "shall encompass its conclusion as to each claim of law raised by

the parties and the factual basis therefor." "The ultimate test as to the adequacy of [the] findings is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for the decision and whether they are supported by evidence. . . . [I]t is incumbent on the trial courts to provide a decision, whether written or oral, that includes all of the necessary factual findings for the benefit of the parties, as well as for proper appellate review." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *In re Halle T.*, 96 Conn. App. 815, 826, 902 A.2d 670, cert. denied, 280 Conn. 924, 908 A.2d 1087 (2006). "Without such a rule, a trial court could inoculate important rulings from appellate scrutiny simply by electing not to set forth the factual basis for its rulings." *Zaniewski* v. *Zaniewski*, 190 Conn. App. 386, 395, 210 A.3d 620 (2019).

Here, the habeas court did not make any findings of fact about what advice Haselkamp provided to the petitioner, or about what advice reasonably competent counsel was required to provide under the circumstances. The memorandum of decision does not contain any findings concerning Radler's alleged statements to Haselkamp indicating that it would be difficult for a person with the petitioner's diagnosis and underlying crimes to obtain his release to the community, or Perlin's testimony that a person in the petitioner's position could expect to be housed in a maximum security facility longer than a person who was convicted of similar crimes. Relatedly, the court did not make any specific findings that would allow us to review the conclusion that Miller was not ineffective for failing to raise the claims identified in count one of the amended petition. As discussed previously, Miller's testimony was equivocal regarding whether she had access to Haselkamp's notes concerning her conversations with Radler. Miller

also testified that, even if she was aware of those conversations, as a matter of strategy she would not have pursued the claim that Haselkamp should have advised the petitioner that he likely would have difficulty cooperating with treatment and progressing out of Whiting.

Without any findings concerning the aforementioned factual issues, we cannot conclude that the habeas court implicitly determined that the petitioner failed to meet his burden of proof with respect to his claim that Miller was ineffective for failing to raise the claims delineated in count one of the amended petition. Such a conclusion could have been based on a number of subsidiary factual determinations, including that the petitioner failed to present sufficiently persuasive evidence that his diagnoses and underlying crimes in fact would negatively affect the length of his confinement, that the petitioner failed to establish with sufficient clarity what advice he received from Haselkamp,[13] that

[13] Noting that Haselkamp did not specifically recall the details of her conversations with Radler or her advice to the petitioner regarding the impact of the petitioner's diagnosis and underlying crimes on his length of confinement, the respondent argues that "[t]he fact that an attorney did not specifically recall doing something does not constitute evidence that she did not, in fact, do it," and, therefore, that the petitioner did not meet his burden of proof because he "failed to present affirmative and credible evidence that Haselkamp did not relay such information . . . ." We reject this argument because it is not supported by the record.

When asked directly whether she had advised the petitioner that his diagnosis and underlying crimes would impact his length of confinement, Haselkamp testified that "all [she] could tell him was it would depend on how well he did in treatment." When asked whether she told the petitioner, "based on what [she] knew about him, [that she] believed he would have a hard time with treatment," Haselkamp testified that she "probably did not say that to him because . . . it didn't appear that he had ever been in formal treatment, so I couldn't assess that . . . . All I could say was [that it was] dependent on him." She further testified that she "never did [a mental disease or defect case] before, so I . . . was assuming that he would be receiving the appropriate treatment at Whiting and that, based on that treatment, he would proceed. . . . And, again . . . I couldn't make that determination. I could just say, this is what I know about the hospital and . . . they should be able to treat you." Although it will be incumbent on the habeas court on remand to make the appropriate factual findings concerning what advice Haselkamp provided to the petitioner and whether that advice was consistent with the duty of reasonably competent counsel at the time of the petitioner's criminal proceedings, we disagree with the respondent that the aforemen-

reasonably competent counsel was not required to provide the kind of advice to which the petitioner claims he was entitled, or that it would have been a reasonable strategic decision for Miller not to pursue that claim. Without resorting to speculation, we cannot conclude, as the respondent contends, that the court's factual findings implicitly rejected the petitioner's claim that Miller was ineffective for failing to raise the claims of ineffectiveness identified in count one of the amended petition. Cf. *Claude* v. *Claude*, 143 Conn. App. 307, 311, 68 A.3d 1204 (2013) ("Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claims] would be entirely speculative." (Internal quotation marks omitted.)).

We also are not persuaded by the respondent's contention that the habeas court's credibility findings necessarily established that the petitioner failed to prove the prejudice prong of his claim. The court found generally that the petitioner was "far from a reliable or credible historian," noting that the petitioner's "first habeas trial testimony was sharply at odds from his testimony in the instant matter in many important respects," that "[h]is memory of the underlying criminal trial is poor," and that he was "under the influence of 'strong, powerful drugs [that] stayed in [his] system' since his 2000 arrest and continued to distort his 'brain' and memory

tioned testimony could not, as a matter of law, support a finding that Haselkamp did not advise the petitioner that his diagnosis and underlying crimes could negatively impact his length of confinement. See, e.g., *Lopez* v. *Commissioner of Correction*, 230 Conn. App. 437, 446–47 and n.6, 330 A.3d 933 (2025) (trial counsel's testimony that he did not have specific recollection of attempting to contact witness but had reason to believe, on basis of his general practice, that he would not have attempted to do so under circumstances was sufficient to support habeas court's finding that counsel did not investigate that witness).

at the underlying criminal trial . . . ." Notably, however, the court did not identify any specific portion of the petitioner's testimony that it found not credible, which portions of the petitioner's testimony were at odds with his testimony from his prior habeas trial, or what the petitioner did not recall about the underlying proceedings. More importantly, the court did not make any specific findings as to whether the petitioner would have elected not to pursue a mental disease or defect defense if he had been advised that his diagnoses and underlying crimes would negatively impact his length of confinement, or if he had been advised of potential defense strategies available if he proceeded to trial or mitigation that could be presented at sentencing. As discussed previously, the petitioner expressly testified that, if Haselkamp had provided such advice, he would not have elected to plead not guilty and to proceed to trial. In light of the court's express statement that it would not address this aspect of the petitioner's claim, we cannot assume from the court's general credibility assessment that it necessarily found this portion of the petitioner's testimony not to be credible.[14]

For the foregoing reasons, we conclude that the habeas court erred by failing to address the petitioner's claim that Miller provided ineffective assistance by failing to raise the claims identified in count one of the amended petition. Ordinarily, our conclusion in this

---

[14] The respondent also argues that the petitioner failed to establish prejudice as a matter of law because, at one point in his testimony, he denied that Haselkamp advised him that "how quickly [he] moved through the system would depend on how well [he] cooperated" with treatment. As discussed previously, the petitioner also testified that Haselkamp had advised him that, to get out of Whiting, he had to "listen to the . . . people that's going to be working with you" and, "[i]n two years . . . you will go to Dutcher, and, before you know it, you will be out in the community." He further testified that Haselkamp did not tell him that his diagnosis and underlying crimes would make it difficult to get out of Whiting. Because the habeas court did not make any factual findings to resolve this apparent discrepancy in the petitioner's testimony, we cannot conclude as a matter of law that the petitioner failed to establish prejudice.

regard may have warranted a remand for the court to articulate whether it considered the petitioner's claim that prior habeas counsel's representation was ineffective for failing to present the claims identified in count one and, if so, to articulate the findings on which its conclusions were based. See, e.g., *Barlow* v. *Commissioner of Correction*, 328 Conn. 610, 614–15 and n.5, 182 A.3d 78 (2018) (appellate courts may remand matter for further factual findings without disturbing judgment while retaining jurisdiction over appeal). In the present case, however, the judge who heard the current habeas action is no longer a judge of the Superior Court and, accordingly, a remand for articulation is not possible. The appropriate remedy, therefore, is to reverse the judgment of the habeas court in part and remand the matter for a new trial only with respect to the petitioner's claim that Miller was ineffective for failing to pursue the claim that Haselkamp was ineffective for the reasons identified in count one of the amended petition. See, e.g., *Claude* v. *Claude*, supra, 143 Conn. App. 311–12 (remanding for new hearing where there were multiple possible grounds on which court could have based its decision and court failed to file memorandum of decision prior to retirement, thereby precluding order requiring court to articulate basis of decision).[15]

---

[15] The petitioner also raises as a separate claim that the habeas court erred by failing to consider the expert testimony of Gallegos and Perlin. As indicated previously, in count two of the amended petition, the petitioner alleged that Miller was ineffective in three ways: by failing to raise the claims identified in count one; by failing to consult with mental health and legal experts "about the significance of the petitioner's mental health profile to the adequacy of [Haselkamp's] performance"; and by failing to adequately plead, prove, and argue the claims that she raised in the first habeas action. From our review of the section of the petitioner's brief addressing his claim that the habeas court erred by failing to consider the testimony of his experts, it appears that the petitioner argues only that the alleged failure to consider such testimony impacted the habeas court's decision with respect to his claim that Miller was ineffective for failing to raise the claims identified in count one. Because we conclude that the petitioner is entitled to a new trial on that claim, we need not address his claim that the habeas court failed to consider the testimony of his experts.

The judgment is reversed in part and the case is remanded for a new trial only on the petitioner's claim in count two of the amended petition that Attorney Justine Miller was ineffective for failing to raise the claims identified in count one; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.